Filed 12/23/13  Certified for publication 1/22/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| MICHAEL THORNBROUGH, | C068317 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV25444) |
| v. | |
| WESTERN PLACER UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

Michael Thornbrough appeals from a judgment denying his mandamus petition, which sought to overturn his dismissal as an Assistant Director of Maintenance for the Western Placer Unified School District (District).  On appeal, Thornbrough raises a number of issues, including principally claims of notice violations at the underlying administrative hearing, bias by the hearing officer, and the improper use of legally-protected expressive conduct (protected speech) to support discipline.

The record shows that Thornbrough was involved in raising public awareness of problems arising from District construction projects. However, the record also shows he displayed blatant insubordination to a newly-appointed female supervisor, Cathy Allen, used a District computer for private purposes--including storing pornography--in violation of District rules, and retaliated against employees who had filed a prior sexual harassment claim against him. Three witnesses, District Superintendent Scott Leaman, Allen, and a management psychologist, opined he should be terminated.

We conclude Thornbrough has not established any due process notice violations, because the record supports the trial court's finding that he was offered continuances to meet amended charges as they arose and, contrary to Thornbrough's view, no statute or rule precluded the filing of amended charges.

We also agree with the trial court that the record shows Thornbrough's challenge to the neutrality of the hearing officer was both untimely and meritless.

We sustain the trial court's finding that *even if* any of the disciplinary charges arose from Thornbrough's protected speech, the separate and extensive evidence of his wrongdoing amply justified termination.

We reject Thornbrough's subsidiary contentions of error, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Procedure*

The original disciplinary charges against Thornbrough were filed on June 16, 2008. After a 15-day administrative hearing, the hearing officer issued a 22-page decision on April 26, 2009, recommending that the District terminate Thornbrough. The District adopted the recommendation.[1]

_____

[1] Although the hearing officer merely *recommended* findings to the District, for convenience we refer to those "findings" as those of the hearing officer, as do the parties.

Thornbrough then filed the instant mandamus petition. On January 25, 2011, the trial court issued a 57-page statement of decision rejecting his arguments. Thornbrough appealed from the ensuing judgment.[2]

*Facts*

The trial court confirmed the bulk of the hearing officer's factual findings. We provide a brief summary of relevant facts here.[3]

The District hired Thornbrough in 1997, and his day-to-day work was competent. As Assistant Director of Maintenance, he supervised some employees and was required to "maintain effective working relationships" with other staff, and obey "all district requirements and Board of Trustee policies."

In 2006, Thornbrough and his immediate supervisor, Director of Maintenance Frank Nichols, reported suspected wrongdoing in connection with District construction projects, and Leaman testified the District had to engage in litigation involving past projects, which is why he reorganized the administration and chose Allen to oversee construction projects.

In August 2007, Thornbrough and the District settled a prior disciplinary action. In part, the prior action accused Thornbrough of referring to David Zinzun, Jr. (David),[4]

_____

[2] By minute order, we previously denied the District's motion to dismiss the appeal as untimely. Because the point is not renewed in the briefs, we do not address it.

[3] Thornbrough's briefing omits salient facts found true both by the hearing officer and by the trial court, and where he describes evidence, he paints it in the light most favorable to himself. By doing so, he has forfeited any evidentiary claims he may have raised. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Overaa Construction v. California Occupational Safety & Health Appeals Bd*. (2007) 147 Cal.App.4th 235, 251; *Estate of Palmer* (1956) 145 Cal.App.2d 428, 431.) Further, he makes factual assertions unsupported by record citations, which we disregard. (See *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

[4] Because David Zinzun, Jr., and his wife Rhia share a common surname, we refer to them hereafter by their respective first names.

a subordinate of Mexican ancestry, as "Paco" and "Pepe," in a derisive manner. The prior action also accused Thornbrough of making an offensive comment about the breasts of David's wife, District employee Rhia, the daughter of former District employee Richard Noyes, in the presence of David and Noyes, conduct Thornbrough admitted in his testimony in this case. The settlement called for Thornbrough to be placed on unpaid leave for 15 days and undergo sexual harassment prevention training.

When Thornbrough returned to work on August 15, 2007, Leaman ordered him not to contact Rhia and not to go to the District office without explicit permission from specified employees. Leaman viewed this order as part of his management powers, not as discipline. Thornbrough sent an e-mail from his District computer to a former District employee, Jay Stewart, discussing this order, showing that he understood it.[5]

Nonetheless, the next day, August 16, 2007, Thornbrough went to the District office without proper permission and spoke with Rhia, claimed he shut the door at her request, and claimed he apologized to her. Her testimony was less benign: She testified he sent her an e-mail asking to meet and she agreed, expecting him to apologize. Instead, he came in, the door shut and accidentally locked, and Thornbrough tried to justify his

_____

[5] Thornbrough used his District computer to send other e-mails to Stewart about District matters, specifically regarding Allen's fitness for office--including accusing her of "lack of brightness" and stating Stewart would not believe how much she "destroyed our department"--and regarding a forged contract issue. (See fn. 6, *post*.) He also used his District computer on District time to draft some of the documents in which he accused Allen and others of misconduct.

In the reply brief, Thornbrough asserts that his communications with Stewart were "private" and therefore could not be used to support discipline. He did not head and argue this "privacy" claim in the opening brief, therefore we deem this belated contention to be forfeited. (See *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 808 (*Utz*).) Further, he does not show where he raised this issue at the administrative hearing or in the trial court, another basis for our finding the issue forfeited. (See *Woodland Joint Unified School Dist. v. Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1449.)

comment about her breasts, said "negative things" about David and Noyes, suggested he had been instrumental in having her hired, and mentioned favors he had done for her and her mother, to make her feel guilty about having filed a complaint, which made her so upset that she cried. She later learned Thornbrough claimed she had falsified personnel records of David, when in reality all she had done was mistakenly place a document pertaining to David in the personnel file for David Zinzun, Sr. (David Sr.), David's father and Rhia's father-in-law.

Thornbrough testified he referred to Rhia's breasts to show David and Noyes the inappropriateness of comments *they* had made, and claimed he met her to apologize to her, at David's suggestion and with the approval of another employee, albeit not one with authority to approve the meeting. He was found to lack credibility.

Also on August 16, 2007, Thornbrough and Nichols submitted a "binder" to the District's Board, a copy of which was given to the Grand Jury, raising purported improprieties regarding District construction projects.

At a meeting on September 18, 2007, the District's Board promoted Allen to Assistant Superintendent of Facilities and Maintenance Services, an action openly opposed at the meeting by Thornbrough, who accused Allen of "intentionally deceiv[ing]" the Superintendent and the Board and the community, and claimed a current Grand Jury investigation was partly due to Allen's "intentional sabotage" of the relationship between the maintenance department and the District. Thornbrough later stated he did not need Allen to tell him his job, called her a "fucking bitch," accused her of a "lack of brightness," and in a letter to her dated December 15, 2007, he criticized her abilities, claimed she was sending "our department backwards," and that "we do not need more bureaucrats[,]" among other insubordinate comments and actions, leading the trial court to find Thornbrough "simply did not respect lines of authority in the workplace and, apparently, he did not care who knew that."

5

Allen testified her promotion to assistant superintendent was effective October 1, 2007, and she previously had been the District's director of site development as of July 1, 2006. Essentially, "from day one" she had problems with Thornbrough and Nichols, which she documented. They questioned her competence and authority, resisted change, and forced her to enlist Leaman to support her on "small things" that were otherwise unworthy of his time. Thornbrough was routinely discourteous and insubordinate to her. Thornbrough lacked the ability to lead and work with other people and would never change. Allen testified "the way" Thornbrough raised claims with the District Board and Grand Jury--including using lies and half-truths--"more than deserves termination[,]" though she agreed it would be improper to punish him for protected speech itself.

David testified that after he had complained about Thornbrough's comments about Rhia's breasts, Thornbrough treated him differently, did not talk to him, and then falsely accused him of workers' compensation fraud, the inquiry into which upset him and caused him to be placed on medication. David's working conditions had improved since Thornbrough had been placed on administrative leave, but he anticipated retaliation for his testimony at the administrative hearing against Thornbrough.[6]

On or about January 7, 2008, Thornbrough filed a written report claiming David had filed a false workers' compensation report. He later accused Rhia of improperly recording absences for David, accused Leaman of failure to properly investigate claims of misconduct, and accused Allen of incompetence, claims replicated in new complaints to the District Board and the Grand Jury in April and May, 2008.[7] In an e-mail to Noyes,

_____

[6] There were other disturbing references to witness intimidation at the administrative hearing stage of this case.

[7] A great deal of hearing evidence revolved around a supply contract Thornbrough implied Allen forged or improperly condoned. The evidence showed Allen did *not* forge the contract, and the District was not harmed because the contract was deemed void. But

Thornbrough referred to Allen and her assistant as "girls" who had a plan to get him and Nichols out of their way.

Dr. Larry Fogli testified as an expert in organizational psychology. After reviewing letters and e-mails Thornbrough wrote, and interviewing Leaman, Allen, and others, he reached the conclusion that no one trusted Thornbrough, he was disruptive, and he had no willingness to change his behavior, making him ineffective as a manager, therefore he should be terminated.

Leaman had been the District's superintendent since July 2006, and previously was an assistant superintendent, principal, and teacher. Since Leaman became the superintendent, Thornbrough had been a "drain" on his time, and it became clear he was retaliating against the employees who reported him for sexual harassment, by making claims against David and Rhia that were investigated and proved baseless. Keeping Thornbrough on would be detrimental, inasmuch as he ignored the chain of command and was insubordinate, spread rumors and made false statements, and refused to let issues go or conform to proper management practices. Based on everything he had seen and heard at the administrative hearing which he had attended, Leaman's view that Thornbrough should be terminated was "only . . . reinforced further[.]"

Massive amounts of downloaded pornographic and otherwise inappropriate material were found on Thornbrough's District computer, and a computer forensic expert testified that the material's download and storage was not inadvertent. Some of the images used the word "bitch" or otherwise denigrated women, one mocked Mexicans, and one mocked sexual harassment. Two of Thornbrough's own witnesses, and Thornbrough himself, agreed some of the images were inappropriate, although

---

the hearing officer found Thornbrough acted merely with poor judgment, not dishonesty, in raising claims about that contract.

Thornbrough--a managerial employee--claimed he was unaware of the District's written computer policy, which clearly barred such material.

Nichols testified Thornbrough admitted surreptitiously tape-recording a meeting with Allen and another employee.[8]

The hearing officer sustained most--but not all--of the charges against Thornbrough. Thornbrough was insubordinate toward Allen, and the incident involving going to Rhia's office after a clear order not to do so was particularly egregious, a finding explicitly endorsed and emphasized by the trial court. The hearing officer found Thornbrough willfully misused District computer equipment both to store pornography and other inappropriate material, and to communicate confidential information to a former District employee. The hearing officer found Thornbrough engaged in retaliation by confronting Rhia, by claiming she mishandled time records for her husband, and by claiming her husband filed a false workers' compensation report. The hearing officer found Thornbrough violated professional standards by surreptitiously tape-recording a meeting with Allen. The hearing officer rejected Thornbrough's claim that he was the victim of retaliation for engaging in protected speech, finding that was not the motivating cause of the charges, and in any event, the evidence apart from any alleged retaliation amply supported termination. [9]

The trial court found Thornbrough's reports of wrongdoing were not legally protected speech, but separately found his termination was justified based on misconduct unrelated to claimed protected speech.

_____

[8] Thornbrough invoked the Fifth Amendment when he was questioned at the hearing about this alleged tape-recording. (See Pen. Code, § 632.)

[9] The hearing officer's findings were made under the rubrics of insubordination, incompetence, discourtesy, willful disobedience, and violation of professional standards, but it is not important now to detail under which particular rubric(s) each incident fell. Other findings will be discussed *post* where relevant.

# DISCUSSION

## I

### *Standard of Review*

We have summarized the standard a trial court applies in mandamus proceedings arising from public employment administrative hearings as follows:

> "The trial court was required to exercise its independent judgment of the evidence before the [District]. [Citation.] In so acting the trial court had the power to make credibility findings....
>
> ". . . . . .
>
> "The trial court should have begun with a strong presumption that the [District]'s decision was correct, and placed on [appellant] the *burden of proof* to show that the decision was against the weight of the evidence. [Citation.] As explained by the California Supreme Court, '"[R]arely, if ever, will a board determination be disturbed unless the petitioner is able to show a jurisdictional excess, a serious error of law, or an abuse of discretion on the facts."'" (*Sager v. County of Yuba* (2007) 156 Cal.App.4th 1049, 1053; see *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816-824 (*Fukuda*); *Davis v. Los Angeles Unified School Dist. Personnel Com*. (2007) 152 Cal.App.4th 1122, 1130-1131.)

On appeal we apply the substantial evidence test. (*Fukuda*, *supra*, 20 Cal.4th at p. 824.) We must view the "evidence in the light most favorable to the trial court, indulging in every reasonable inference in favor of the trial court's findings and resolving all conflicts in its favor." (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1078.) However, "we make an independent review of any questions of law necessary to the resolution of this matter on appeal[,]" (*id*. at p. 1077) including the interpretation of rules of law, and whether the procedures comported with due process (*Bostean v. Los Angeles Unified School Dist*. (1998) 63 Cal.App.4th 95, 107-108).

We address Thornbrough's claims largely in the order in which he briefs them.

9

II

*Notice of Charges*

Thornbrough contends the several amendments to the District's charges against him violated Education Code section 45113, subdivision (c) (§ 45113(c)) and due process of law. We agree with the trial court that section 45113(c) did not prohibit amending the charges, and that because Thornbrough was offered continuances after each amendment to meet any new charges, no due process violation occurred.

*A.    Section 45113*

The pertinent portion of section 45113(c) provides as follows:

> "The governing board shall adopt rules of procedure for disciplinary proceedings which shall contain a provision for informing the employee by written notice of the specific charges against him or her, a statement of the employee's right to a hearing on those charges, and the time within which the hearing may be requested which shall be not less than five days after service of the notice to the employee, and a card or paper, the signing and filing of which shall constitute a demand for hearing, and a denial of all charges."

Pursuant to this section, the District adopted what is referred to in the record as "Regulation 4218(6)," providing as follows:

> "At any time before an employee's appeal is finally submitted to the Board or to a hearing officer for decision, the complainant may, with the consent of the Board or hearing officer, serve on the employee and file with the Board an amended or supplemental recommendation of personnel action.

> "If the amended or supplemental recommendation presents new causes or allegations, the employee shall be afforded a reasonable opportunity to prepare [his or her] defense. Any new causes or allegations shall be deemed controverted and any objections to the amended or supplemental causes or allegations may be made orally at the hearing and shall be noted on the record."

Regulation 4218(6) is consistent with formal administrative hearing practice.[10] "In a formal hearing, the accusation or statement of issues may be amended before the

_____

[10] Government Code section 11507, part of the Administrative Procedures Act, partly

10

case is submitted. [I]f new charges are presented, the respondent must be afforded a reasonable opportunity to prepare a defense to them. New charges are considered controverted, and objections to the amended pleading may be made orally. [Citation.] *Authorities seem to agree that amendments to administrative pleadings should be freely allowed during as well as before the hearing, subject to the qualification that if new issues are raised or a party is surprised, the aggrieved party should have an opportunity to prepare a defense.*" (Cal. Admin. Hearing Practice (Cont.Ed.Bar 2d ed. 2011) The Hearing Process, § 7.119, p. 420, emphasis added; see *Taylor v. City of Los Angeles* (1997) 60 Cal.App.4th 611, 617 [applying "the general rule that amendments to conform to proof are within the broad discretion of the presiding officer of administrative bodies"].) Whether to grant a continuance, and the proper length of a continuance, are entrusted to the discretion of the hearing officer. (See *Rudolph v. Athletic Com. of CA* (1960) 177 Cal.App.2d 1, 12-14 (*Rudolph*); Cal. Admin. Hearing Practice, *supra*, § 6.65, p. 305.)

Thornbrough interprets section 45113(c) to entitle him to "at least five days to request a hearing on the newly filed charges" each time an amended statement of charges was filed. But the statute required the District to adopt rules providing for "written notice of the specific charges against [the employee], a statement of the employee's right to a hearing on those charges, and the time within which the hearing may be requested which shall be not less than five days after service of the notice to the employee[.]" (§

provides: "At any time before the matter is submitted for decision the agency may file or permit the filing of an amended or supplemental accusation. . . . If the amended or supplemental accusation presents new charges the agency shall afford respondent a reasonable opportunity to prepare his defense thereto, but he shall not be entitled to file a further pleading unless the agency in its discretion so orders. Any new charges shall be deemed controverted, and any objections to the amended or supplemental accusation may be made orally and shall be noted in the record." (Stats. 1945, ch. 867, § 1, p. 1629.) This statute clearly permits *multiple* amendments. (See 20 Ops.Cal.Atty.Gen. 192, 193 (1952).)

45113(c).)  The five-day period referenced in the statute plainly pertains to and only to the minimum time an employee must be given to request a hearing.  Here, the proposed action against Thornbrough was termination, he had notice of that proposed action on June 16, 2008, and he evidently promptly requested a hearing to contest that proposed action.  Thereafter, amendments to the charges were governed by Regulation 4218(6), not by section 45113(c).[11]

Accordingly, we reject Thornbrough's contention that section 45113 was violated.

*B.     Due Process*

Thornbrough also contends the various amendments thwarted his ability to prepare and present an adequate defense to the charges, thereby violating due process.  To assess Thornbrough's claim, we first outline the procedural history regarding the different charging documents in this case.

1.  The Charging Documents

The original charges were filed on June 16, 2008.

Amended charges were filed on September 8, 2008.

_____

[11]  Contrary to Thornbrough's view, *Coburn v. State Personnel Bd*. (1978) 83 Cal.App.3d 801 (*Coburn*), did not hold that due process requires a five-day continuance after every *amendment* to a charging document.  It construed an administrative regulation in light of due process principles to require a minimum of five days of notice before the effective date of "'any punitive action'" against an employee, to give the employee at least five days to respond to the "'proposed action'" against the employee. (*Coburn, supra,* 83 Cal.App.3d at pp. 805-806 & fn. 2.)  Similarly, *California School Employees Assn. v. Livingston Union School Dist.* (2007) 149 Cal.App.4th 391 (*CSEA*), involved the time period for requesting a hearing on a proposed punitive action, and held such period could not run from the date a vague notice was *mailed* to the employee, because that deprived the employee of adequate time *to request a hearing* under section 45113. (*CSEA, supra,* 149 Cal.App.4th at pp. 396-400.)  Neither of these cases involved the *amendment* of charges after a hearing has already been initiated by timely request of the employee. Cases are not authority for propositions not considered. (*Hart* v. *Burnett* (1860) 15 Cal. 530, 598.)

On the first day of the administrative hearing, November 18, 2008, Thornbrough's counsel objected that some exhibits referenced in the District's hearing brief pertained to allegations not embraced by the charges. He initially asked for a three-week continuance to secure witnesses and review exhibits. In response, the District suggested a two-week continuance, and asked for an order that Thornbrough not be paid during any continuance he requested. The parties discussed the issue off the record, then *agreed* that by November 21, they would present objections to evidence, responses would be filed by November 26, and the hearing would resume December 8, 2008, after a second telephonic prehearing conference on December 3, 2008. They agreed Thornbrough's pay would not be stopped during the continuance.[12] Thus, as the trial court found, Thornbrough received a three-week continuance, from November 18 to December 8, as he had requested.

On December 5, 2008, after the telephonic conference, the hearing officer granted the District's motion to file a second amended accusation, consolidating issues referenced in the District's hearing briefs of November 17 and 26, 2008 into "a single document[.]" The order finds Thornbrough was not prejudiced because he had had "over two weeks" to prepare to meet the issues, had stipulated to continue the hearing until December 8, 2008, and although the hearing officer invited Thornbrough's counsel to "set forth with specificity further actions necessary to prepare a defense and a reasonable estimate of the time necessary to do so[,]" counsel had not done so, accordingly, the amendment was granted.

_____

[12] It appears Thornbrough's pay was stopped once the District adopted the hearing officer's recommendation and terminated him.

On Monday, December 8, 2008, the second amended charges were filed. Thornbrough agreed on a 24-hour continuance, but reserved the right "to request a specific continuance based on the lack of discovery."[13]

The next day, Thornbrough's counsel claimed a due process violation, based on new charges, vague charges, time-barred charges and lack of disclosure of evidence. But he *agreed* to proceed, claiming it would be financially prohibitive to seek a continuance, but he did not offer any evidence or offer of proof to support this claim.

During the fifth hearing day, Thursday, December 11, 2008, Thornbrough's counsel became disruptive, but declined the hearing officer's offer of a break, claiming a break would cause expense to his client. Counsel again offered no evidence or offer of proof to support the claim of financial hardship.

On December 17, 2008, after the District rested, Thornbrough's counsel claimed the various charging allegations and purported new evidence had surprised him, but that Thornbrough's finances had precluded asking for a continuance. However, once again counsel presented no evidence or offer of proof to show financial hardship.

On December 19, 2008, the parties discussed scheduling over the holidays and the need to serve certain subpoenas, and ultimately the hearing resumed on January 12, 2009, after a three-week break.

On Thursday, January 15, 2009, the District moved to amend to conform to proof, to add claims based on alleged perjured testimony by Thornbrough regarding e-mails purporting to be to and from the Governor's office, and based on evidence of the tape recording. Thornbrough's counsel again claimed Thornbrough could not afford the legal fees caused by requesting a continuance. Again he offered no evidence and made no detailed offer of proof to support his claim.

_____

[13] In his briefing, Thornbrough inaccurately states the hearing officer denied his motion to continue.

The third requested amendment was granted, and Thornbrough's request for a week's continuance to meet the new charges was granted.

2. Analysis

"The essence of procedural due process is notice and an opportunity to respond. [Citation.] 'The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing."'" (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1279.)

The record shows Thornbrough effectively stipulated to a continuance after the first amendment to the charging document, agreed to a 24-hour continuance after the second amendment, and was granted the one-week continuance he requested after the third amendment. Although his briefing complains about the multiple amendments, he presents no coherent explanation of how any particular amendment compelled an additional continuance or otherwise prejudiced him. Yet the time necessary to respond to an amendment is necessarily fact-specific to the particular proceeding, taking into account "all of the circumstances[.]" (*Rudolph*, *supra*, 177 Cal.App.2d at pp. 12-14.) We see nothing in the timeline of relevant procedures that violated due process.

In *Raab v. Dept. of Alcoholic Beverage Control* (1960) 177 Cal.App.2d 333 (*Raab*), applying Government Code section 11507 (quoted *ante*), the court rejected a due process claim, finding that, despite several amendments to the accusation, "although objection was made, no continuance was sought and the parties proceeded with the hearing." (*Raab, supra,* 177 Cal.App.2d at p. 334; see also *Anserv Ins. Services, Inc. v. Kelso* (2000) 83 Cal.App.4th 197, 208-209.) Here, when Thornbrough objected (through counsel) he received continuances, and although he claimed inability to seek further continuances because he could not afford it, he never provided evidence or even a clear offer of proof about his financial condition. At one point he claimed no income except for his salary, but there was never any offer of proof of his financial *resources*, nor the probable cost of any continuance. The mere assertions of counsel did not amount to

15

evidence of financial hardship. (See *Beagle v. Vasold* (1966) 65 Cal.2d 166, 176; *Estate of Pittman* (1980) 104 Cal.App.3d 288, 295.)

Accordingly, having failed to demonstrate why the given continuances were not adequate, and having failed to excuse his failure to seek further continuances if needed, Thornbrough has failed to establish any due process violation based on inadequate notice of the various amended disciplinary charges.

III

*Impartial Hearing Officer*

Thornbrough next contends he "was denied due process and an impartial decision maker after the hearing officer refused to disclose potential conflicts of interest based on his past and present associations with counsel for the District and the contract by which he was retained by the District." We agree with the hearing officer and the trial court that Thornbrough's requests were untimely, and agree with the trial court that no financial-incentive bias is shown by this record.

*A. Procedural Background*

On January 13, 2009, the twelfth day of the hearing, when asked if Thornbrough had told him that he had recorded conversations, Nichols refused to answer. The hearing officer directed him to answer, and Thornbrough's counsel lectured the hearing officer about his purported duties to protect witnesses from potential criminal liability, and went so far as to "admonish" the hearing officer as a member of the State Bar. Nichols then answered that Thornbrough told him he taped a conversation, once, in September 2007, involving Allen and her assistant. Nichols suspected this was illegal, but did not reprimand Thornbrough.

At the end of that hearing day, Thornbrough's counsel stated "it's been noted that I think on two occasions that the hearing officer represents school districts. Would you divulge which school districts your office represents?" The hearing officer suggested the query was belated, but asked for a written motion.

On January 14, 2009, Thornbrough filed a written motion to have the hearing officer disclose "potential" conflicts of interest. The motion acknowledged counsel had learned the hearing officer's identity on November 8, 2008, 10 days before the first hearing date, and two days before the first prehearing teleconference, but claimed there had been "no adequate opportunity to determine [the hearing officer's] relationship to opposing counsel and the school district" before the hearing began. Counsel did not explain why he could not have asked for this information at the prehearing conferences, or on the first day of the administrative hearing. The motion alleged that counsel had learned the hearing officer "represents school districts[,]" works for a law firm that has represented school districts, and that law firm "has an office" "essentially across the street from 555 University Avenue, Sacramento," where trial counsel for the District maintains offices. No evidence was attached to support these claims. The motion asked the hearing officer to disclose (1) "[p]ast or present representation of school districts[,]" (2) "[p]ast or present associations" with the District's lawyers, and (3) the "contractual arrangement" with the District.

The hearing officer directed the District to file a written response to the motion, but also stated on the record that he had been hired "as an independent hearing officer" by the District, had never previously performed any services for the District or any of its principals, and had never met any District Board members.

The District's response emphasized 12 days of hearings had taken place, and surmised the hearing officer's rulings had inspired the disclosure request. Supporting declarations showed the hearing officer's office was in Folsom, and Thornbrough's counsel had been so advised on November 7, 2008.[14] The District's lead trial counsel declared that he had not met the hearing officer before November 2008, had spoken with

_____

[14] Two prehearing orders made by the hearing officer before Thornbrough raised this issue also state the hearing officer's office address was in Folsom.

17

him "years ago," but had "no recollection" of that conversation. The District's general counsel overseeing this case declared she advised Thornbrough's counsel of the hearing officer's identity on November 7, 2008, and gave him the hearing officer's law office contact information.

In a written order, the hearing officer found the motion was untimely, because it was made after 12 days of hearings and more than two months after he had been selected. The order also states the hearing officer was "aware of no potential or actual conflicts of interest that require disclosure in this matter."

The trial court found Thornbrough's motion to disclose was untimely, but also found no due process violation based on financial incentive bias.[15]

*B.    Analysis*

Our Supreme Court has stated the general rule regarding impartial administrative adjudicators as follows:

> "When, as here, an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal. [Citation.] A fair tribunal is one in which the judge or other decision maker is free of bias for or against a party. [Citations.] Violation of this due process guarantee can be demonstrated not only by proof of actual bias, but also by showing a situation 'in which experience teaches that the probability of actual

_____

[15] The trial court also expressed its view that the hearing officer should have responded more explicitly to Thornbrough's counsel's questions, or "elaborate[d] better in disclosing his past or future relationship with the District[.]" We agree in at least one respect: Thornbrough asked for the "contractual arrangement" with the District, and we do not see why the hearing officer did not simply disclose to the parties whatever document memorialized that arrangement. But as we explain, *post*, we agree with the trial court that the disclosure made was adequate, and in any event, the purported contract Thornbrough points to on appeal does not provide any incentive to favor the District.

For the first time in the reply brief, Thornbrough complains that not all of the attorneys representing the District filed declarations denying conflicts with the hearing officer. This claim comes too late. (See *Utz*, *supra*, 109 Cal.App.2d at p. 808.)

bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' [Citation.]

"Unless they have a financial interest in the outcome [citation], adjudicators are presumed to be impartial [citation]." (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737.)

### 1. Timeliness

We agree with the trial court that Thornbrough's disclosure motion was untimely. (See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 384-385 ["once plaintiffs were provided with information sufficient to permit inquiry, they had a duty to exercise reasonable diligence to determine the facts and act upon them"]; Cal. Admin. Hearing Practice, *supra*, § 6.28, p. 284 ["Failure to raise the issue in a timely manner precludes judicial review of bias"].) Thornbrough failed to adequately explain to the trial court why he did not raise the issue earlier.[16]

### 2. Neutrality of Hearing Officer

On the merits of Thornbrough's claim, we agree with the trial court that there is nothing in the record to rebut the presumption that the hearing officer was "a 'reasonably impartial, noninvolved reviewer'" as required by due process. (*Linney v. Turpen* (1996) 42 Cal.App.4th 763, 775-777.)

*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017 (*Haas*), emphasized by Thornbrough, does not support his claims. In *Haas*, the relationship between the county and the hearing officer was "'open-ended'" and the county anticipated employing her in

_____

[16] As the trial court noted, a prior hearing officer "bowed out after objection" by Thornbrough's counsel, after the parties had exchanged pre-hearing letters with that prior officer regarding an evidentiary matter. This demonstrates Thornbrough's counsel knew how to properly disqualify a hearing officer. It also lends support to the view that Thornbrough's counsel used disqualification as a litigation tactic. Indeed, in his opening brief, Thornbrough's counsel asserts the motion was made "After it became apparent that the hearing officer was working hand in hand with the counsel for the District[.]" No citation supports this unsupported claim against the hearing officer, but it does illuminate the basis for counsel's actions. (See fn. 18, *post*.)

the future.  (*Haas, supra,* 27 Cal.4th at p. 1022.)  This incentivized her to rule in favor of the county, to secure future appointments.  (*Haas, supra,* at pp. 1027-1031.)  *Haas* summarized its holding as follows:  "The question presented is whether a temporary administrative hearing officer has a pecuniary interest requiring disqualification when the government unilaterally selects and pays the officer on an ad hoc basis and the officer's income from future adjudicative work depends entirely on the government's goodwill. We conclude the answer is yes."  (*Id.* at p. 1024; see *Yaqub v. Salinas Valley Memorial Healthcare System* (2004) 122 Cal.App.4th 474, 483-486 [hearing officer in physician hospital privileges case recently had been on a the board of hospital foundation, and had presided over three other hearings, facts "sufficient to create a 'possible temptation' to favor the hospital"].)

But, as the trial court in this case correctly found, Thornbrough did not ask the hearing officer about *future* employment prospects with the District.  The information Thornbrough asked for was (1) "Past or present representation of school districts[,]" (2) "[p]ast or present associations with owners or employees" of the *District's lawyers*, and (3) "[t]he contractual arrangement by which the hearing officer" was retained by the District.  The hearing officer responded to the last question on the record by stating he had been hired "as an independent hearing officer" by the District.  The order responding to Thornbrough's motion found the hearing officer knew "of no potential or actual conflicts of interest that require disclosure in this matter."  Although the hearing officer might have answered the question more explicitly (see fn. 15, *ante*), in context, the answers given were sufficient to dispel the reasonable--as opposed to speculative-- concerns Thornbrough articulated.  (See *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 591-592 ["a perception of bias in an adjudicator is *reasonably* present . . . only if the prospects of future employment with the opponent can be seen as resting on decisions favorable to the opponent"]; *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 549

20

[bias not implied].)  As the trial court found, both Thornbrough and the District cited *Haas* in their written papers on this issue, in response to which, the hearing officer stated he knew of no "*potential* or actual conflicts of interest[,]" which in context functions as a denial of future employment prospects with the District, the problem described in *Haas*.[17]

Thornbrough contends the hearing officer's failure to give more detailed responses compels reversal.  Thornbrough cites *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81 (*Nightlife Partners*), in support of the proposition that the failure by a hearing officer to respond to an allegation of a conflict of interest creates an inference that a conflict exists.  We read the holding of *Nightlife Partners* as narrower.  There, at a hearing to consider a use permit, the hearing officer stated that he was inexperienced and would "be advised and assisted during the hearing by" a particular city attorney.  That same city attorney was simultaneously representing the city in federal litigation against the use permit applicant, creating a clear conflict of interest.  In opposition to the applicant's mandamus petition, the hearing officer declared he had reached his decision without consulting any other city employee and that he was not biased by his own status as a city employee, but he did not dispute that he had been advised by that particular city attorney during the administrative hearing.  (*Nightline Partners, supra,* 108 Cal.App.4th at pp. 84-86, 87-88.)  *Nightlife Partners* first held that the hearing officer's statement on the record that he would be advised and assisted by the city attorney was itself sufficient to support the trial court's finding that this had occurred.  (*Nightline Partners, supra,* at p. 88.)  It then found the hearing officer's failure to address this point in his declaration "created an inference that, in fact, [the city

_____

[17]  *Haas* is also distinguishable for the same two reasons pointed out by *Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1220, fn. 7, namely, (1) Haas raised the issue at the beginning of the administrative hearing, and (2) Haas presented an adequate record demonstrating the tainted relationship between the hearing officer and the county.

attorney] actually did advise and assist [the hearing officer] during the hearing. (*Ibid*.) We do not discern in *Nightlife Partners* a broad rule that if a hearing officer does not respond explicitly to every claim, an inference of bias arises.

Thornbrough also refers to a document purporting to be the contract between the District and the hearing officer, tendered by the District to the trial court in opposition to Thornbrough's mandamus petition. The trial court excluded this document because it was not in the administrative record, lacked "proper foundation and constitutes inadmissible hearsay." Thornbrough fails to head or argue any attack on these grounds, and therefore has forfeited the point. (See *Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9 (*Loranger*).)

More importantly, far from advancing Thornbrough's claims, this document, assuming it *is* the relevant contract, undermines his claims. Thornbrough correctly notes that the document shows the hearing officer was to be paid an hourly rate. But nothing in *Haas* criticized the use of an hourly rate as such, and the court emphasized that: "Certainly due process does not forbid the government to pay an adjudicator when it must provide someone with a hearing before taking away a protected liberty or property interest. Indeed, the government must ordinarily pay the adjudicator in such cases to avoid burdening the affected person's right to a hearing." (*Haas*, *supra*, 27 Cal.4th at p. 1031.) Nothing in the purported contract on its face suggests that the District was holding out the promise of *future employment*, which is the problem identified by *Haas*. Therefore, even if we accepted the excluded document as the relevant contract, it does not bolster Thornbrough's claim of bias.

Accordingly, we reject Thornbrough's contention that the hearing was unfair because the hearing officer was financially biased in favor of the District.[18]

_____

[18] In a footnote bereft of authority or analysis, Thornbrough accuses the hearing officer of actual bias because of rulings he made adverse to Thornbrough's position. This claim

IV

*Legally-Barred Charges Used to Increase Discipline*

Thornbrough contends legally-barred incidents were improperly used to increase his discipline. We find no prejudicial error.

*A.   Background*

Thornbrough was charged with dishonesty for lying on his 1997 District employment application by claiming he lived in Roseville, and by omitting the fact that there was a disciplinary matter pending against his state contractor's license. The hearing officer found Thornbrough had not misled the District about his license, because his "superior(s) knew of the matter" and his job did not require a contractor's license. The hearing officer found "no doubt" that Thornbrough misrepresented his home address on his application, and Thornbrough admitted he had done so. The hearing officer found he did so as part of a "scheme" with a former District employee, "to increase his opportunity to be hired. This act of dishonesty, however, was known to several of Mr. Thornbrough's supervisors over the years and never was any adverse action . . . taken. The passage of time renders this incident too remote to form the basis for independent discipline." Nonetheless, the hearing officer found this act of dishonesty was relevant in assessing Thornbrough's credibility, particularly since Thornbrough showed no remorse and his

_____

is forfeited. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Further, ruling against a party, even erroneously, does not show bias. (See *McEwen v. Occidental Life Ins. Co.* (1916) 172 Cal. 6, 10-11; *Shakin v. Board of Medical Examiners* (1967) 254 Cal.App.2d 102, 116-117.) Actual bias is never presumed. (*Gai v. City of Selma* (1998) 68 Cal.App.4th 213, 220.) Absent a record supporting a claim of actual bias, castigating the factfinder is both unpersuasive and improper. (See *Lazzarotto v. Atchison, T. & S.F.R. Co.* (1958) 157 Cal.App.2d 455, 462 ["counsel . . . should not have assumed that we would be influenced by their epithets"].) In light of Thornbrough's baseless charge, we feel compelled to point out that the record shows Thornbrough's counsel repeatedly interrupted and attempted to lecture the hearing officer about the law, the facts, and the appropriate procedures to follow, yet the hearing officer retained control of the proceedings in an appropriate manner and displayed no discernible bias.

demeanor at the hearing "suggested he considered the matter trivial, if not amusing."[19] The hearing officer also found this act of dishonesty was relevant to the appropriate level of discipline.

The final charging document did not allege the "Paco" and "Pepe" remarks as misconduct, but alleged Thornbrough retaliated against David and others for participating in the earlier sexual harassment complaint against Thornbrough, and alleged he engaged in harassment based on gender and ethnicity. But under the rubric of "discourtesy," one of the hearing officer's findings was that "Thornbrough engaged in discourtesy of an extreme nature when he used clearly derisive ethnic slurs such as 'Paco' and 'Pepe' to refer to [David], who is of Hispanic origin." The trial court impliedly agreed with Thornbrough that this finding was erroneous *in the way it was framed* because there was no evidence Thornbrough continued to use those slurs after the prior disciplinary matter was settled, but the trial court found, in its independent judgment of the evidence, that these remarks were relevant to show Thornbrough's bias towards and later retaliation against the Zinzuns.[20]

_____

[19] Similarly, although the hearing officer rejected one claim of violation of District standards based on Thornbrough's creation of a sham e-mail account to which he sent work e-mails falsely purporting to report District misconduct to a government employee, the hearing officer found this incident showed "Thornbrough's tendency to engage in a disingenuous, if not outright dishonest, manner with regard to District activities" and further weakened Thornbrough's credibility.

[20] A later portion of the trial court's findings states the evidence "demonstrates petitioner was discourteous and disrespectful to another employee by his use of the names 'Paco' and 'Pepe,' when referring to Mr. Zinzun, an Hispanic." If the trial court meant this provided a separate ground for discipline, we agree with Thornbrough that the trial court erred. But in light of the trial court's explicit finding that this evidence was relevant *to show bias and retaliation*, we do not construe this passage as necessarily stating an independent *ground* of discipline. In any event, any error was harmless given the other evidence in the record, as discussed *post*, which leads ineluctably to the conclusion that termination was proper.

*B.     Analysis*

Thornbrough's disciplinary case was subject to a two-year statute of limitations, absent concealment of the facts supporting a given charge. (Ed. Code, § 45113, subd. (d).) Therefore, because some superiors had been aware of his misstatement of address and nondisclosure of license discipline, the hearing officer properly rejected those charges as independent grounds for discipline.[21] And because the prior disciplinary settlement embraced any punishment for making the ethnic slurs against David, these slurs could not support an independent ground for discipline.

However, in complaining about the use of these "legally barred" charges, Thornbrough conflates a legal *ground* for discipline with the facts constituting *evidence* supporting such ground, as well as the permissible use of that evidence in fashioning the resulting penalty.

A public employee must be notified of the specific rules allegedly violated, that is, the legal grounds or causes for discipline, and also must be told the facts alleged as to each ground. (See 52 Cal.Jur.3d (2010) Public Officers and Employees, §§ 171–172, pp. 249–251; 1 Silver, Public Employee Discharge and Discipline (3d ed. 2001) State Administrative Review, § 707[B], p. 398 [notice must state "the nature of the misconduct alleged (statutory language should not simply be reiterated)[fn.] and the agency rules or regulations allegedly violated"]; see also *Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831 [agency "has no discretion to impose any disciplinary punishment . . . unless it finds . . . that grounds for adverse action have been established"], *id.* at p. 837 [statement "adequate if it 'is sufficiently specific in regard to

_____

[21] Contrary to Thornbrough's view, the District did not act improperly in bringing claims regarding his 1997 application. Until evidence on those claims was heard, the District was unaware that any employees knew of the application's problems. In light of the evidence of Thornbrough's lack of concealment, the District properly conceded in the trial court that those charges were barred.

circumstances and date to allow the accused to identify the transaction and understand the nature of the alleged offense to enable him to present his defense thereto'"].)  In Thornbrough's case, pursuant to a District regulation, he was entitled to be told the proposed action (dismissal), the legal "cause or causes for the personnel action," and "the specific acts or omissions upon which the causes are based."

But so long as one valid legal cause for discipline is established, all relevant facts should be considered in assessing punishment.  (See generally, *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217-219.)   And the facts pertaining to barred grounds could be considered when assessing credibility or bias, as the hearing officer found.  Generally, even in formal administrative hearing practice under the Administrative Procedure Act, "Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c).)  Similarly, by District regulation, "Neither the Board nor a hearing officer shall be bound by rules of evidence used in California courts.  Informality in any such hearing shall not invalidate any order or decision made[.]"  Thornbrough's general credibility, demeanor at the hearing itself, and past discipline were all relevant factors to consider in determining whether his misconduct warranted his termination.  (See *Cipriotti v. Board of Directors* (1983) 147 Cal.App.3d 144, 153 [current charges "part of a larger picture and were like the proverbial straw that broke the camel's back.  Evidence of the other events relative to petitioner's past conduct was competent and relevant and necessary to determine the significance of petitioner's latest acts"]; see also *Perea v. Fales* (1974) 39 Cal.App.3d 939, 943 ["evidence upon which 'responsible persons are accustomed to rely,' although not admissible in civil actions, is admissible at the agency hearing"].)

The trial court was aware of the points raised by Thornbrough.  It found the hearing officer did not err in considering the job application as it pertained to credibility,

but in any event exercised its independent judgment on the evidence and declined to consider the application in making his own assessment of Thornbrough's credibility, which the trial court found was lacking, based on other evidence in the record. Therefore if there had been any error by the hearing officer in considering the job application, the error was cured because the trial court did not consider it.

Contrary to Thornbrough's characterization of the trial court's findings, the portion of the statement of decision addressing punishment does not mention the ethnic slurs or application dishonesty, but states generally that "the overwhelming evidence virtually compels" termination, and specifically references the testimony of Dr. Fogli, regarding the incorrigible nature of Thornbrough's conduct and the fact that his continuation in office would be detrimental to the mission of the District, opinions that the trial court found "merely reflect the obvious." Thus, the penalty determination was based on the totality of misconduct, which was severe (e.g., confronting Rhia after an explicit stay-away order, storing massive amounts of pornography on his District computer, blatant and repeated insubordination toward Allen), and did not turn on ethnic slurs and the misstatements on Thornbrough's 1997 job application.

Once a valid ground of misconduct is shown, an agency has great latitude to determine the appropriate penalty. (See *Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 45-47; *Lowe v. Civil Service Com.* (1985) 164 Cal.App.3d 667, 677.) Yet, nowhere in his briefing does Thornbrough head and argue a claim that the penalty imposed on this record reflects an abuse of discretion. Accordingly, he has forfeited the claim that any errors regarding the penalty determination were prejudicial. (*Loranger*, *supra*, 184 Cal.App.4th at p. 858, fn. 9.) In any event, assuming the minor errors by the hearing officer and trial court in the treatment of the evidence complained of by Thornbrough, any such errors were harmless.

27

IV

*Retaliation for Protected Activities*

In three somewhat overlapping claims, Thornbrough contends he was punished for protected speech, in violation of the First Amendment, Labor Code section 1102.5, and Education Code section 44110, et seq. This has been his primary and consistent defense theory.

Thornbrough first contends the trial court erred by finding that his "letters to the District Board were not protected activity[,]"and that when the trial court alternatively "assumed arguendo that the communications were protected, it applied the wrong standard to determine if Mr. Thornbrough could be fired anyway." In making the latter claim, Thornbrough contends the trial court misapplied governing law, and argues "If the initial disciplinary action alleged misconduct based on protected activity, the District [necessarily] violated Labor Code § 1102.5." In a third related argument, Thornbrough claims the District necessarily violated Education Code section 44112, et seq., if it charged him based on any protected activity.

As we shall explain, we need not determine whether or not Thornbrough engaged in protected speech, because both the hearing officer and the trial court found that other facts amply justified termination, and such finding is sufficient, as a matter of law, to obviate Thornbrough's retaliation defense.

A. *The Law*

Generally speaking, both Labor Code section 1102.5 and Education Code section 44112, et seq. protect defined employees who make good faith reports of defined improper governmental activities, such as violations of law, from retaliation by their employers. (See, e.g., Ed. Code, §§ 44112, subds. (c) & (e), 44113, subd. (a); Lab. Code, § 1102.5, subd. (b); *Conn v. Western Placer Unified School Dist.* (2010) 186 Cal.App.4th 1163, 1175, 1180-1181 [Ed. Code, § 44113]; *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384 [Lab. Code, § 1102.5].)

28

"Normally, an improper motivation of the agency in bringing the charges against the respondent is not relevant in the administrative proceeding or on mandamus, as long as there were sufficient facts introduced at the hearing to support the decision. Those motivations, however, may be relevant to the extent that they have a direct bearing on the credibility of the witnesses or evidence." (1 Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2012) Court's Scope of Review Under CCP § 1094.5, §6.57, pp. 202-203; see *Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 106-107.) However, it is well-settled that if the agency's motivation is to silence a public employee's lawful protected speech, that would invalidate a disciplinary action. For example, in *Bekiaris v. Board of Education* (1972) 6 Cal.3d 575 (*Bekiaris*), a probationary teacher was precluded from introducing evidence "that the true reason for the recommendation that he not be rehired was dissatisfaction with his political activities-including his appearance before the Modesto City Council on behalf of the Peace and Freedom Party and his letters to the editor of the Modesto Bee expressing political views." Our Supreme Court reversed with directions to the trial court to consider evidence regarding the teacher's defense, and "make an independent assessment of established factual elements and determine whether the true reason for dismissal was official dissatisfaction with the [public employee's] exercise of constitutional rights, so that, absent the exercise of these rights, the board would not have dismissed the teacher." (*Bekiaris*, *supra*, 6 Cal.3d at pp. 593-594.)

Where a public employee is "allegedly discharged both because of dissatisfaction with his performance and because of his exercise of constitutional rights[,]" "the courts apply a 'but for' test, and reinstatement is not mandated if the employer can demonstrate

that it would have reached the same decision even had the employee not engaged in protected conduct." (*Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 205.)[22]

### B.    Analysis

As Thornbrough contends, his letters of April 23 and May 22, 2008 to the Board and Grand Jury claiming misconduct contributed to the decision to file charges against him. This is shown by Leaman's testimony and the original charging document filed against Thornbrough on June 16, 2008, which explicitly references those letters among others and alleges they included "false charges containing half-truths, false innuendos and factual distortions against fellow employees." It also alleges misconduct unrelated to *any* letters Thornbrough sent, such as his inability to "maintain effective working relationships" by a supervisor, insubordination, undermining Allen's authority, and retaliation against those involved in the prior sexual harassment complaint. Such factors, too, motivated Leaman's decision to seek Thornbrough's termination.

The allegations referencing the letters to the Board and Grand Jury were dropped in the amended charges filed on September 8, 2008, and not realleged in the amended statements of charges filed December 8, 2008 and January 15, 2009. The later charging documents did refer to Thornbrough's letters to Allen and Leaman of December 15, 2007 and January 7, 2008, respectively--in which he accused Allen of incompetence, among other things--along with allegations unrelated to any possible claimed protected activity

_____

[22] In his briefing, Thornbrough faults the trial court for ignoring the analysis in *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121 (*Mokler*). The portion of *Mokler* he emphasizes holds that where a plaintiff has *direct* evidence of retaliation "'believed by the trier of fact, the defendant can avoid liability only by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor.'" (*Mokler*, *supra*, 157 Cal.App.4th at p. 138, quoting *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67-68.) But that holding is consistent with the trial court's analysis here, as we shall explain.

(e.g., storing improper material on his District computer, using the computer to communicate with Stewart, and confronting Rhia after being ordered to stay away).

The hearing officer found the letters to Allen and Leaman insubordinate, but described abundant evidence of insubordination apart from those letters. The hearing officer briefly referenced the letters to the Board and Grand Jury to show that Thornbrough persisted in his accusations of misconduct against the Zinzuns. The hearing officer found Thornbrough showed "his persistent and rather brazen complaints to the Board and the Grand Jury" "were significant factors in the eventual decision" to seek his termination. However, the hearing officer explicitly rejected Thornbrough's claim of retaliation, finding "The clear and convincing evidence in this case established a sustained pattern of egregious misconduct by Mr. Thornbrough, entirely justifying his termination, independent of any legally impermissible concurrent motive by the District."

The trial court, exercising its independent review of the evidence, after stating at one point the clear and convincing standard (see Ed. Code, § 44114, subd. (e)) found the District's actions were based on "evidence separate and apart" (see Ed. Code, § 44112, subd. (d)) from any protected disclosures Thornbrough made, the District had no retaliatory motive, and his dismissal "would have been recommended notwithstanding the [allegedly protected] letters."[23]

_____

[23] After the briefing in this case was complete, our Supreme Court held the clear and convincing standard was *not* required in order to sustain a "same-decision" defense under the Fair Employment and Housing Act (FEHA). (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 237-239 (*Harris*).) Based on *Harris*, the normal civil standard of preponderance of the evidence would apply in all "same-decision" cases except where statutes (e.g., Ed. Code, § 44114, subd. (e); Lab. Code, § 1102.6) require the higher standard of proof. Again, in this case both the hearing officer and the trial court held the District to the higher standard of proof.

*Harris* also held that in some cases a FEHA plaintiff might obtain declaratory or injunctive relief, and attorney fees, notwithstanding a successful "same-decision" defense, in order to prevent and deter discriminatory workplace conduct. (*Harris*, *supra*,

As noted by our Supreme Court, in a case involving a probationary teacher: "Just as we decline to permit school authorities to mask an unconstitutional dismissal behind a statement of valid causes, so we cannot allow a teacher genuinely dismissed for valid causes to be reinstated because school authorities were also displeased with his exercise of constitutional rights. If it were otherwise a teacher about to be dismissed for valid causes could insulate himself from dismissal simply by engaging in political activities offensive to his superiors." (*Bekiaris*, *supra*, 6 Cal.3d at p. 593, fn. 12; see *Mt. Healthy City School Dist. Board of Ed. v. Doyle* (1977) 429 U.S. 274, 285-286 [50 L.Ed.2d 471, 482-483] [the employee should not be put "in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing"].)

The evidence abundantly supports the trial court's finding that the District would have terminated Thornbrough regardless of any allegedly protected activity. The incident with Rhia reflects dangerously severe misconduct by a manager. After making unwelcome sexual comments to Rhia, stipulating to accept punishment, and being ordered to stay away from her, he went to her office and humiliated her the day after the order. This conduct, by a managerial employee, is itself sufficient to justify termination. Added to that, the open insubordination against Allen and the inappropriate computer usage, both unrelated to any claimed protected speech, reinforce the view that termination was inevitable, even *if* any of the other charges were based on protected activities.

Thornbrough makes what amounts to a "fruit of the poisonous tree" argument (see *Wong Sun v. United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455]), by claiming that the facts underlying some or all of the amended charges would never have come to light but for the purportedly improper original charges. He claims this is "after-

56 Cal.4th at pp. 232-235.) But we are not reviewing a civil suit filed by Thornbrough, and therefore this portion of the *Harris* holding is not relevant to this appeal.

32

acquired" evidence that cannot be used to retroactively legitimize the original improper charges. We disagree.

In particular, Thornbrough argues that his District computer would not have been searched *but for* the filing of the original charges. But, as we explained earlier (Part I, *ante*), new charges may be filed during the administrative proceedings as long as a reasonable opportunity to defend against them is provided. Leaman testified he became aware of the contents of the computer while preparing for the administrative hearing. Thornbrough, a manager who was required to know and obey District policies, admitted some of the material on his computer was improper, and there was forensic evidence showing he intentionally stored it on that computer. That evidence bore *no* connection to any alleged retaliatory animus on the part of the District.

The final amendment also added charges based on what was evidently surprise testimony by Nichols that Thornbrough recorded a conversation with Allen and her assistant, and surprise testimony by Thornbrough, claiming that certain e-mails purportedly between him and a member of the Governor's staff were in fact sent by and to Thornbrough by using two different e-mail accounts he had set up. The perjury allegation was not sustained by the hearing officer, but the unlawful tape recording allegation bore no relationship to any retaliatory animus, and it, too, reflects severe misconduct (if not criminality) by a managerial employee.

The "after-acquired" evidence doctrine may prevent an employer in a civil action from legitimizing prior punitive actions based on evidence found after those actions were taken. The seminal California case on the doctrine, arising on summary judgment, involved an employee who made "material omissions" on his employment application, which were not discovered until after he was fired. The court held that the fact the omissions might or would have led to termination did not insulate the employer from liability for wrongful termination. (*Cooper v. Rykoff-Sexton, Inc*. (1994) 24 Cal.App.4th 614, 617-619; see 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and

33

Employment, § 211, pp. 267-268; 8 Witkin, *id*., Constitutional Law, § 860, pp. 307-308 [but after-acquired evidence may prevent reinstatement of the errant employee].) The doctrine does not address amendments to pending administrative discipline cases, based on evidence discovered during the proceedings, that is *before* the final decision to terminate is made.

Moreover, in *Harris*, our Supreme Court emphasized that "when we refer to a same-decision showing, we mean proof that the employer, in the absence of any discrimination, would have made the same decision *at the time it made its actual decision*." (*Harris*, *supra*, 56 Cal.4th at p. 224.) In this case, Thornbrough was not terminated until the District's Board voted to adopt the hearing officer's recommendations, at which time all of the patently *unprotected* evidence we have described was before the Board. That is the point at which we must determine if the "same decision" would have been made by the Board.

Thornbrough also claims that because the District never admitted a retaliatory motive, it cannot establish a same-decision defense. Our Supreme Court has rejected this line of argument in *Harris*, a FEHA case where the plaintiff claimed the defendant could not raise a same-decision defense because it had denied discriminatory animus: "Harris further argues that for equitable reasons, an employer that wishes to make a same-decision showing must concede that it had mixed motives for taking the adverse employment action instead of denying a discriminatory motive altogether. But there is no inconsistency when an employer argues that its motive for discharging an employee was legitimate, while also arguing, contingently, that if the trier of fact finds a mixture of lawful and unlawful motives, then its lawful motive alone would have led to the discharge." (*Harris*, *supra*, 56 Cal.4th at p. 240.)

Because the same decision--termination--would have been reached regardless of any consideration of allegedly protected speech, we have no need to review

34

Thornbrough's specific claims regarding such conduct: Thornbrough's exercise, if any, of his protected constitutional right(s) was irrelevant to the outcome of the instant case.

V

*Reweighing the Evidence*

Thornbrough argues due process violations "are not cured by re-evaluating the evidence[,]" the trial court misapplied governing standards, and the trial court did "not have the option of reweighing the evidence and deciding that the evidence supports termination even if there was a violation of due process of law."

His briefing largely reiterates claims already discussed and rejected.

To the extent Thornbrough contends a due process error in an administrative proceeding can never be deemed harmless, he is wrong. The trial court, reviewing an administrative finding, was bound to obey the following statute:

> "The inquiry . . . shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., 1094.5, subd. (b).)

This does not mean that any legal mistake at the administrative hearing level compels the finding to be set aside. Instead, as a general rule, "procedural due process violations, even if proved, are subject to a harmless error analysis." (*Hinrichs v. County of Orange* (2004) 125 Cal.App.4th 921, 928.) "A writ of administrative mandamus will not be issued unless the court is persuaded that an abuse of discretion was prejudicial. [Citation.] In other words, the reviewing court will deny the writ, despite abuse of discretion, if the agency's error did not prejudicially affect the petitioner's substantial rights." (1 Cal. Administrative Mandamus, *supra*, § 6.95, p. 233; see *Leal v Gourley* (2002) 100 Cal.App.4th 963, 968-969 [notice that failed to advise of right to an

35

interpreter caused no prejudice, because appellant already had been advised of his right to an interpreter].)

In an administrative case involving teacher credentialing, we pointed out that an "'Error of law is not reversible unless, on an examination of the record, it appears to have resulted in a miscarriage of justice.'" (*Broney v. California Com. on Teacher Credentialing* (2010) 184 Cal.App.4th 462, 472, quoting 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 322, p. 369.) And it is well-settled that the improper admission or rejection of evidence at an administrative hearing does not provide "grounds for reversal unless the error has resulted in a miscarriage of justice. [Citation.] In other words, it must be reasonably probable a more favorable result would have been reached absent the error." (*Lone Star Security & Video, Inc. v. Bureau of Security & Investigative Services* (2009) 176 Cal.App.4th 1249, 1254-1255.) Thus, Thornbrough's view that any errors in administrative cases compel reversal is incorrect.

Generally, "the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) But, as we noted *ante*, Thornbrough has failed to fairly set forth the extensive evidence of his misconduct that was wholly unrelated to the letters he sent, including downloading and maintaining pornography on a District computer, persistent and blatant insubordination (e.g., referring to Allen, as a "fucking bitch" and seeking to undermine her authority), and violating a direct order to stay away from Rhia after he agreed to be disciplined for his conduct toward her. These acts alone justify termination of a managerial school district employee.

In short, the overwhelming evidence shows that termination was the appropriate penalty based on the facts wholly unrelated to any claims of improper consideration. Accordingly, we find no miscarriage of justice in the judgment denying Thornbrough's mandamus petition.

## DISPOSITION

The judgment denying the petition for writ of mandate is affirmed. Thornbrough shall pay the District's costs of this appeal. (Cal. Rules of Court, rule 8.278.)

                                                  _____DUARTE_____, J.

We concur:

_____BUTZ_____, Acting P. J.

_____MURRAY_____, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| MICHAEL THORNBROUGH,<br><br>      Plaintiff and Appellant,<br><br>   v.<br><br>WESTERN PLACER UNIFIED SCHOOL DISTRICT,<br><br>      Defendant and Respondent. | C068317<br><br>(Super. Ct. No.<br>  SCV25444)<br><br><u>ORDER OF PUBLICATION</u> |


APPEAL from a judgment of the Superior Court of Placer County, Charles D. Wachob, Judge. Affirmed.

Law Office of John P. Henderson, John P. Henderson, for Plaintiff and Appellant.

Ellis Law Group, Mark E. Ellis and Theresa M. LaVoie, for Defendant and Respondent.


The opinion in the above-entitled matter filed on December 23, 2013, was not certified for publication in the Official Reports.

For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.

BUTZ,                    Acting P.J.

MURRAY,        J.

DUARTE,         J.

2