Filed 3/6/24

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| TEMPLE OF 1001 BUDDHAS et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF FREMONT,<br><br>        Defendant and Respondent. | A167719<br><br>(Alameda County Super. Ct. No. 21CV002808) |

This appeal arises from a final administrative decision after a hearing upholding nuisance determinations and orders with respect to plaintiffs' residential property.  Plaintiffs' main claim is that section 1.8.8 of the California Building Code (Building Code) preempts the City of Fremont's process for appeals relating to violations of the Fremont Building Standards Code (Fremont Municipal Code, §§ 15.05.010 et seq.) and nuisance orders premised thereupon.

In support, plaintiffs direct us to *Lippman v. City of Oakland* (2017) 19 Cal.App.5th 750 (*Lippman*), a decision by a First District, Division Four panel, which held that:  (1) Building Code section 1.8.8 requires a city to provide for appeals before an independent agency or board authorized to hear such appeals or

1

the city's governing body, and (2) Oakland's appeals process for determinations relating to building code and building maintenance code violations, which set appeals before a single hearing officer appointed by the enforcing agency, violated section 1.8.8. (*Lippman*, at p. 760.) Plaintiffs also raise numerous challenges regarding the fairness of their administrative appeal hearing.

We reject plaintiffs' procedural unfairness claims and their arguments insofar as Fremont's nuisance determinations rested on zoning violations. But, consistently with the analysis in *Lippman,* we conclude that state law preempts Fremont's appeals process for enforcement determinations based on violations of Fremont's Building Standards Code, including Fremont's nuisance determinations that rest on alleged violations of that code. We accordingly reverse the judgment in part and direct the trial court to issue appropriate mandamus relief.

## BACKGROUND

The property at issue is a 29-acre parcel located in Fremont, subject to certain development constraints.[1] Portions of the property have a slope of at least 30 percent; the property is traversed by at least two natural watercourses; and it is located in a very high fire hazard area and an earthquake-induced landslide zone. The property is zoned as open space. Historically, the property was used for agricultural purposes,

---

[1] Many of the facts in this summary are taken from the administrative hearing officer's final decision. The court below found that substantial evidence supported this decision, and plaintiffs do not argue to the contrary on appeal.

2

supporting a single-family home (main house), a barn (former barn), a mobile home (mobile home), and a detached structure that the parties refer to as a barn or garage (former garage).

In 2013, Fremont served Miaolan Lee, then-owner of the property[2], with a "Notice and Order to Abate Nuisance" arising from the conversion of the former barn to residential uses (NOA 1). The parties settled the matter in 2014, agreeing that the former barn would not be used as a dwelling unit.

In 2017, Fremont received a complaint regarding construction on the property. After several attempts to arrange an inspection, Fremont obtained a court warrant. Fremont inspected the property in February 2018, and city staff found many code violations, including new, unpermitted structures; unpermitted construction, electrical and plumbing work; construction within a riparian corridor; and evidence of habitation in buildings where habitation was not permitted. Fremont's Community Development Department, Building & Safety Division (Building & Safety Division), issued a "Notice and Order to Abate Nuisance" on March 29, 2018 (NOA 2). NOA 2 set forth 12 violations associated with construction and structures on the property and required plaintiffs to legalize the structures or, if the structures could not be legalized, to obtain permits to demolish them. Lee appealed.

On May 24, 2018, Fremont conducted another inspection pursuant to a second inspection warrant. On June 14, 2018,

---

[2] The property was transferred from Lee and her husband to the Temple of 1001 Buddhas in March 2018.

Fremont's Building & Safety Division issued a "Notice and Order to Vacate" (NOV). The NOV stated that the building official had condemned three structures on the property as unfit for human habitation: a new two-story residence (new house); the former garage, which had been expanded to a three-story building with a residential dwelling unit; and the former barn, which had again been remodeled extensively without permits.

On June 19, 2018, the Building & Safety Division issued a "Notice and Order to Abate Nuisance Amended" (NOA 2A). NOA 2A provided that it amended and superseded NOA 2. It listed 13 violations, and it required plaintiffs to legalize the structures or, if the structures could not be legalized, to obtain permits to demolish them. Lee timely appealed the NOV and NOA 2A.

On October 10, 2019, Lee submitted a conditional use permit application to Fremont. She stated therein that the project included a zoning or general plan change, but she did not provide the required new zoning or general plan designation. Lee also stated that the project site contained two dwelling units, buildings used for religious institutions/facilities, and new religious institution/facilities uses. She later clarified that the proposed religious use was private, she intended to continue using the property for single-family residential uses, and her application was directed at obtaining permits for several of the violating structures cited in NOA 2A.

Fremont responded with a project information summary listing additional required submittals, and it subsequently provided Lee with comments on her permit application. Lee

4

submitted a response in November 2020.  However, according to Fremont's planning department, the city never received a revised submittal from Lee with maps that Fremont had requested.  In November 2020, the planning department referred the matter back to the code enforcement department.

On March 11, 2021, the Building & Safety Division issued a "Notice and Order to Abate Nuisance Amended" (NOA 3).  NOA 3 listed the following 13 violations:  (1) construction of an accessory gazebo structure and pools; (2) construction of structures (a bridge, paths, decks, and stairs) around the existing watercourse; (3) alterations to an existing mobile home; (4) alterations to an existing non-habitable structure (the former barn), including a kitchen, shower, and air conditioning units; (5) additions and alterations to the existing former garage, including an additional 4,000 square feet of floor area and two new floor levels appearing to contain habitable space; (6) a new, 3,000-square foot greenhouse with associated electrical, mechanical, and plumbing work; (7) alterations to the existing main house, including a new garage, new habitable space, and exterior decks; (8) flat work/hard scape disturbing soils in excess of one acre; (9) a new, 2,500-square foot dwelling space approximately 180 feet from the main house; (10) solar panel additions to an existing solar energy system; (11) construction and/or alteration of structures with plumbing supply and drain/waste systems that increased the drain, waste, or effluent discharge of the property; (12) construction and/or installation of liquid carrying tanks and

5

associated plumbing; and (13) construction of a tree house with electrical fixtures.

NOA 3 provided that it amended and superseded NOA 2A. Each violation in NOA 3 cited Fremont Municipal Code (Municipal Code) section 8.60.040, and provided that "any condition which violates any code or ordinance adopted by [Fremont] is unlawful and a public nuisance." The infringement of multiple sections of the Municipal Code and various state laws served as the basis for the nuisance determinations, and each of the 13 violations also listed the laws infringed. NOA 3 instructed, "You have the right to appeal the determination of nuisance or the specific remedies and administrative orders imposed by this Notice by filing a written appeal with the City Clerk . . . within seven (7) calendar days of the date of service of this Notice for violations pursuant to [Municipal Code] § 8.60.120, [Municipal Code] § 15.45.130, and [Municipal Code] § 15.05.060."

On March 12, 2021, Lee appealed NOA 3. Fremont appointed Ann Danforth as the hearing officer to hear the appeal of the NOV and NOA 3. Danforth held a multi-day hearing and issued a decision finding that Fremont had met its burden of establishing the 13 violations in NOA 3. Danforth ordered removal of various structures that could not be legalized because of violations of Fremont's zoning laws — specifically Municipal Code section 18.55.040, subdivision (b)(7), which forbids any development within a riparian corridor, and Municipal Code

6

section 18.55.050, subdivision (c), which forbids any development on slopes equal to or steeper than 30 percent.

Following Danforth's decision, plaintiffs filed a verified petition including claims for administrative mandamus under Code of Civil Procedure section 1094.5, declaratory relief, and injunctive relief.

In their opening brief below, plaintiffs argued that Danforth exceeded her jurisdiction by ordering demolition and abused her discretion for numerous reasons, including because substantial evidence did not support her findings. They further argued that they received an unfair hearing. Plaintiffs also asserted that Fremont's hearing process for appeals was deficient, and, quoting *Lippman*, *supra*, 19 Cal.App.5th 750, they argued that " 'there is a mandatory duty to establish a local appeals board or an agency authorized to hear appeals. And, if no such board or agency exists, the governing body shall act as the local appeals board.' " Plaintiffs made a similar, somewhat more detailed argument regarding *Lippman* and Building Code section 1.8.8 in their reply brief, and the trial court permitted Fremont to submit supplemental briefing on the issue.

After hearing argument, the trial court rendered an oral decision. The court ultimately signed an order denying the petition, finding that: (1) the case was an administrative mandamus case; (2) "[t]here is no cause of action for declaratory relief in an administrative mandamus case"; (3) Danforth's order was supported by substantial evidence; (4) the evidence did not support a finding that Danforth was biased, and plaintiffs waived

7

any bias claim by failing to raise it at the administrative hearing; and (5) the hearing proceeded in a manner required by law because the "gravamen of [NOA 3], and [Danforth's decision] were zoning violations, not violations of the California Building Code," and, on those grounds, *Lippman* was distinguishable. Plaintiffs timely appealed from the final judgment.

## DISCUSSION

Plaintiffs raise many claims of error in this appeal, including that their administrative hearing was unfair and did not proceed according to law. They argue that the trial court erred by rejecting their claims for traditional mandamus or declaratory relief, and the trial court improperly excluded evidence. We will address each claim, but we turn first to plaintiffs' main contention that Fremont's process for administrative appeals conflicts with Building Code section 1.8.8.

## I. Claims Regarding Fremont's Process for Appeals

As an initial matter, we note that the parties debate the scope of available remedies with respect to plaintiffs' preemption claim. Plaintiffs seek administrative mandamus (Code Civ. Proc., § 1094.5), and, although they treat declaratory and traditional mandamus relief as interchangeable, they also seek traditional mandamus relief to compel Fremont to perform a mandatory duty (Code Civ. Proc., § 1085). Fremont argues that the trial court correctly determined that this case could only proceed under Code of Civil Procedure section 1094.5. We will address traditional mandamus, *post*, but, given that all parties

8

agree the issue should be addressed under Code of Civil Procedure section 1094.5, we will start there.

### A. Standard of Review

Administrative mandamus is appropriate to inquire "into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal . . . ." (Code of Civ. Proc., § 1094.5, subd. (a).)  The statute limits the court's scope of review to:  "[W]hether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (*Id.,* subd. (b).)

"Regardless of the writ involved . . . where the facts are undisputed, the reviewing court faces a question of law.  'On questions of law arising in mandate proceedings, we exercise independent judgment.' "  (*Santa Clara Valley Transportation Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1313.)  Further, "to decide the meaning of [a statute], we apply our independent review without reference to the trial court's actions."  (*Ibid*.)

### B. Preemption

Fremont is a general law city.[3]  Under article XI, section 7 of the California Constitution, Fremont therefore " 'may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' " (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897.)  A conflict between state law and a local ordinance exists if the ordinance duplicates or is coextensive with state law, it is contradictory or inimical thereto, or it enters an area either expressly or impliedly fully occupied by state law.  (*Id.* at pp. 897–898.)  " 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' " (*Id.* at p. 897.)

### C. The Municipal Code Conflicts with the Building Code

#### 1. The Applicable State Law

The California Building Standards Law (Health & Saf. Code[4], §§ 18901–18949.31) creates a process for adopting statewide building standards, which are codified in title 24 of the California Code of Regulations as the California Building Standards Code.  The California Building Standards Commission

---

[3] Fremont confirmed its status as a general law city at oral argument.

[4] All further statutory references are to the Health & Safety Code unless otherwise stated.

is required to publish an edition of the California Building Standards Code every three years.[5] (§ 18942, subd. (a).)

"The State Housing Law [§ 17910 et seq.] provides statewide construction and occupancy standards for buildings used for human habitation." (*Lippman, supra*, 19 Cal.App.5th at p. 757.) The State Housing Law incorporates the California Building Standards Code and the requirements of various uniform codes. (§ 17922.)[6] The State Housing Law and the rules and regulations promulgated pursuant thereto, and the provisions of the California Building Standards Code "apply in all parts of the state" "to apartment houses, hotels, motels, and dwellings, and buildings and structures accessory thereto." (§ 17950.)

---

[5] The California Building Standards Code currently comprises multiple parts, including the California Administrative Code, California Building Code, California Residential Code, California Electrical Code, California Mechanical Code, California Plumbing Code, California Energy Code, California Historical Building Code, California Fire Code, California Existing Building Code, California Green Building Standards Code, and California Reference Standards Code.

[6] Section 17922 states, in relevant part, "Except as otherwise specifically provided by law, the building standards adopted and submitted by the [Department of Housing and Community Development] for approval pursuant to [the California Building Standards Law], and the other rules and regulations that are contained in Title 24 of the California Code of Regulations . . . shall be adopted by reference . . . . The building standards and rules and regulations shall impose substantially the same requirements as are contained in the most recent editions of the following international or uniform industry codes . . . ." (§ 17922, subd. (a).)

11

The State Housing Law allows cities and counties to adopt local regulations imposing the same requirements as those imposed in section 17922, and cities and counties may make changes in the provisions adopted pursuant to section 17922 and published in the California Building Standards Code if the city or county makes express findings that the modifications are reasonably necessary because of local climatic, geological, or topographical conditions. (§§ 17958, 17958.5, 17958.7; see also § 18941.5, subd. (b) [city or county may establish more restrictive building standards that are reasonably necessary because of local climatic, geological, or topographical condition].)

At issue in this appeal is section 1.8.8 of the 2019 Building Code[7] entitled "APPEALS BOARD," which provides:

> **1.8.8.1 General**.
> Every city, county, or city and county shall establish a process to hear and decide appeals of orders, decisions and determinations made by the enforcing agency relative to the application and interpretation of this code and other regulations governing construction, use, maintenance and change of occupancy. The governing body of any city, county, or city and county may establish a local appeals board and a housing appeals board to serve this purpose. Members of the appeals board(s) shall not be employees of the enforcing agency and shall be knowledgeable in the applicable building codes, regulations and ordinances as determined by the governing body of the city, county, or city and county.

---

[7] We grant plaintiffs' request for judicial notice and take judicial notice of the meeting minutes from Fremont's City Council as well as the statutes, regulations, and ordinances attached to their request.

12

Where no such appeals boards or agencies have been established, the governing body of the city, county, or city and county shall serve as the local appeals board or housing appeals board as specified in California Health and Safety Code Sections 17920.5 and 17920.6.

**1.8.8.2 Definitions.**
The following terms shall for the purposes of this section have the meaning shown.

**HOUSING APPEALS BOARD**. The board or agency of a city, county, or city and county which is authorized by the governing body of the city, county, or city and county to hear appeals regarding the requirements of the city, county, or city and county relating to the use, maintenance and change of occupancy of buildings and structures, including requirements governing alteration, additions, repair, demolition and moving. In any area in which there is no such board or agency, "Housing appeals board" means the local appeals board having jurisdiction over the area.

**LOCAL APPEALS BOARD.** The board or agency of a city, county, or city and county which is authorized by the governing body of the city, county, or city and county to hear appeals regarding the building requirements of the city, county, or city and county. In any area in which there is no such board or agency, "Local appeals board" means the governing body of the city, county, or city and county having jurisdiction over the area.

**1.8.8.3 Appeals.**
Except as otherwise provided in law, any person, firm or corporation adversely affected by a decision, order or determination by a city, county, or city and county relating to the application of building standards published in the California Building Standards Code, or any other applicable rule or regulation adopted by

the Department of Housing and Community Development, or any lawfully enacted ordinance by a city, county, or city and county, may appeal the issue for resolution to the local appeals board or housing appeals board as appropriate.

The local appeals board shall hear appeals relating to new building construction and the housing appeals board shall hear appeals relating to existing buildings.

### 2. Lippman

In *Lippman*, Oakland issued citations for blight and substandard living conditions on the plaintiff's rental property. (*Lippman*, *supra*, 19 Cal.App.5th at p. 754.)  Oakland's municipal code at the time allowed the city manager to set procedures for final decisions on administrative citations before hearing officers (Oakland Mun. Code, §§ 1.12.080, subd. A, 1.12.080, subd. C); it provided that a hearing officer would hear appeals of "orders, decisions, or determinations made by the Building Official relative to the application and interpretation of the non-administrative (technical) requirements of [Oakland's Building Construction] Code" (Oakland Mun. Code, §§ 15.04.1.125, subd. A, 15.04.025, subd. A); and it provided that a hearing officer would render a final decision on appeals of building maintenance code violations (*id.*, §§ 15.08.410, subd. B, 15.08.420, 15.08.430, 15.08.450).  (*Lippman*, at p. 759.)  The plaintiff's appeals of the citations thus came before a single hearing officer appointed by Oakland's building services department.  (*Ibid.*)  After the hearing officer denied the appeals, the plaintiff petitioned for, among other things, a traditional writ

14

of mandate. (*Id.* at p. 755.) He argued that Oakland's municipal code conflicted with section 1.8.8 of the 2010 Building Code[8] and "his appeals should have been heard before the city council or an appeals board instead of a single hearing examiner." (*Lippman*, at p. 755.) As is relevant here, the trial court denied his petition for traditional mandamus, and the plaintiff appealed only that denial. (*Ibid.*)

Finding that there was a conflict between local and state law, this Division reversed the trial court's ruling with respect to traditional mandamus.[9] (*Lippman*, *supra*, 19 Cal.App.5th at pp. 760–762, 767.) The court explained that the plain language of Building Code section 1.8.8.1 "establish[ed] an appellate process, which may be satisfied in one of three ways: (1) by creating a

---

[8] The text of section 1.8.8 in both the 2019 Building Code and the current version of that code is the same as the 2010 version set forth in *Lippman*.

[9] As a charter city, Oakland " 'gain[s] exemption, with respect to its municipal affairs, from the "conflict with general laws" restrictions of' article XI, section 7." (*Sherwin-Williams Co.*, *supra*, 4 Cal.4th at p. 897, fn. 5, italics omitted.) *Lippman* accordingly applied the preemption analysis required when the home rule doctrine applies. (*Lippman*, *supra*, 19 Cal.App.5th at p. 757.) Thereunder, the court first resolves whether there is a conflict using traditional preemption standards. (*Lippman*, at p. 757; *Barajas v. City of Anaheim* (1993) 15 Cal.App.4th 1808, 1813–1814.) If so, the court asks whether the local legislation impacts a statewide concern and whether the law reasonably relates to the resolution of that concern and is narrowly tailored to limit incursion into legitimate municipal interests. (*Lippman*, at p. 757.) We do not discuss *Lippman*'s resolution of the last two prongs of this analysis because they do not apply to general law cities. (See *Cultiva La Salud v. State of California* (2023) 89 Cal.App.5th 868, 874–875.)

local appeals board for new construction and a housing appeals board for existing buildings; (2) by creating an agency authorized to hear such appeals; or (3) by having the governing body of the city serve as the local appeals board or housing appeals board." (*Lippman*, at p. 760.) "[A]t minimum, there is a mandatory duty to establish a local appeals board or an agency authorized to hear appeals. And, if no such board or agency exists, the governing body shall act as the local appeals board." (*Ibid.*) The court concluded, "[Oakland]'s process of authorizing an appeal to a single hearing officer appointed by the enforcement agency is contrary to the plain language of the State Housing Law and the Building Code and is inconsistent with the legislative intent. Accordingly, we conclude the municipal code conflicts with state law to the extent it provides for an appeals process inconsistent with the mechanism mandated by the Building Code and State Housing Law." (*Id.* at p. 762.)

### 3. The Municipal Code

Fremont's Building Standards Code adopts the California Building Standards Code with amendments pursuant to sections 18941.5, 17958.5, and 17958.7.[10] (Mun. Code, §§ 15.05.010, 15.05.040.) The Fremont Building Standards Code is adopted every three years in sequence with the California Building Standards Code. (See Mun. Code, § 15.05.010.) The Building & Safety Division is responsible for the Fremont Building

---

[10] The provisions of the 2019 Fremont Building Standards Code and the current 2022 Fremont Building Standards Code cited herein are the same except when otherwise indicated.

16

Standards Code's administration and enforcement. (Mun. Code, § 15.05.020.) Any violation of the Fremont Building Standards Code is an offense as set forth in Municipal Code section 1.15.010 and "constitutes a public nuisance." (*Id.*, § 15.05.050.)

Municipal Code section 15.05.070, entitled, "Appeals," provides: "(a) Where the provisions of this title allow for a board of appeals, the board shall be an administrative hearing officer appointed by the city manager. The appeal shall follow the process and procedures of [Municipal Code] Sections 8.60.120 through 8.60.150. The decisions of the hearing officer are final as to the city. The hearing officer shall have no authority relative to interpretation of the administrative provisions of this title nor shall the hearing officer be empowered to waive requirements of this title. [¶] (b) An application for appeal shall be based on a claim that the true intent of this code has been incorrectly interpreted, the provisions of this code do not fully apply or an alternative provides at least the equivalent of that prescribed in this code in quality, strength, effectiveness, fire resistance, durability and safety."[11]

Fremont has also adopted the International Property Maintenance Code as part of the Fremont Building Standards Code. (Mun. Code, §15.45.020.) It contains its own section

---

[11] NOA 3 cited Municipal Code section 15.05.060 when informing plaintiffs of the right to appeal. This appears to be a typographical error as the appeals provision appeared at former section 15.05.060 in the 2016 Fremont Building Standards Code but was moved to section 15.05.070 in the 2019 Fremont Building Standards Code.

related to appeals, stating: "111.1 Application for appeal. Any person directly affected by a decision of the code official or a notice or order issued under this code may appeal that decision, notice or order by filing an appeal with the city clerk within seven calendar days of the date of service of that decision, notice, or order. . . [¶] 111.2 Notice of hearing. Notice of hearing and the hearing shall be conducted as provided for in [Municipal Code] Sections 8.60.130 through 8.60.150." (*Id.*, former § 15.45.130 [2016 & 2019]; *id.*, § 15.45.080.)

Next, Fremont's "Neighbor Preservation" law addresses public nuisances. (Mun. Code, § 8.60.010 et seq.) "It shall be considered a public nuisance and unlawful for any property owner to maintain or to allow his/her property to be maintained in a condition that is detrimental to public health, safety, or general welfare or in a condition which violates any code or ordinance adopted by the city." (*Id.*, § 8.60.040.) Whenever the city manager or his or her designee determines that property is maintained as a nuisance, notice for specific abatement of nuisance must be given to the property owners. (*Id.*, §§ 8.60.060, 8.60.090.)

Municipal Code sections 8.60.120 through 8.60.150 govern appeals. "The property owner may appeal the specific abatement of nuisance determination or the specific remedies and administrative orders imposed by the city manager by filing an appeal with the city clerk within seven calendar days of the date of service of the notice for specific abatement of nuisance determination." (*Id.*, § 8.60.120.) Once an appeal is filed, it must

18

be assigned by the city clerk to a single hearing officer who is designated by the city manager, and the hearing officer must schedule a hearing within 15 calendar days.  (*Id.*, §§ 8.60.130, subds. (a)–(b), 8.60.150, subds. (a)–(c).)  The hearing officer hears and decides the appeal, and his or her statement of decision is "final and conclusive."  (*Id.*, § 8.60.150, subd. (b)(2)–(3).)

Fremont may also issue administrative citations for violations of the Municipal Code; appeals of those citations are to be heard by a hearing officer designated by the city manager, and the hearing officer's decision is "final and conclusive."  (Mun. Code, §§ 1.20.030, subd. (a), 1.20.060, subds. (e), (h).)

### 4. Analysis

As a preliminary matter, we reject Fremont's argument that plaintiffs forfeited their preemption claim.  Forfeiture may apply where a party failed to raise an issue below, but forfeiture is "not automatic" and is largely a matter of fairness to the trial court and the opposing party.  (*Velasquez v. Centrome, Inc.* (2015) 233 Cal.App.4th 1191, 1210–1211.)  Here, although the trial court believed plaintiffs had raised a new issue with respect to the application of *Lippman* and Building Code section 1.8.8 in their reply brief, the court declined to find forfeiture, it allowed Fremont to submit a supplemental brief, it heard argument, and it decided the issue.  There is thus no reason to apply the forfeiture doctrine.

Turning to the merits, we agree with plaintiffs that provisions of the Municipal Code conflict with section 1.8.8 of the Building Code.  As *Lippman* observed, the "plain language of

19

Building Code section 1.8.8.1" mandates "that local governments establish an appellate process, which may be satisfied in one of three ways: (1) by creating a local appeals board for new construction and a housing appeals board for existing buildings; (2) by creating an agency authorized to hear such appeals; or (3) by having the governing body of the city serve as the local appeals board or housing appeals board. Notably, however, the Building Code does not contemplate an appeal before a single hearing officer." (*Lippman, supra*, 19 Cal.App.5th at p. 760.) "Consequently, at minimum, there is a mandatory duty to establish a local appeals board or an agency authorized to hear appeals. And, if no such board or agency exists, the governing body shall act as the local appeals board." (*Ibid.*)

Under Fremont's process, a single hearing officer designated by the city manager and then assigned by the city clerk hears appeals relating to violations of the Fremont Building Standards Code and public nuisance determinations premised on those violations. (Mun. Code, §§ 8.60.130, 8.60.150, subd. (a), 15.05.050, 15.05.070, 15.45.080; see also *id.*, former § 15.45.130.) The hearing officer's decision is final and conclusive. (*Id.*, §§ 15.05.070, 15.45.080, 8.60.150, subd. (b)(3); see also *id.*, former § 15.45.130 [2016 & 2019].) Fremont has not authorized a board or a distinct agency possessing the qualifications required by Building Code section 1.8.8.1, or, failing that, Fremont's governing body, to hear appeals from those adversely affected by a "decision, order or determination by a city . . . relating to the application of building standards published in the California

20

Building Standards Code, or any other applicable rule or regulation adopted by the Department of Housing and Community Development, or any lawfully enacted ordinance by a city, county, or city and county."[12] (Building Code, § 1.8.8.3.) To this extent, the Municipal Code conflicts with state law.

Fremont contends there is no conflict and *Lippman* is distinguishable because this case involves public nuisance determinations rather than administrative citations for building code and maintenance violations. We disagree.

The appeals process in Building Code section 1.8.8 applies to public nuisance determinations premised on Fremont Building Standards Code violations. In Fremont, "It shall be considered a public nuisance and unlawful for any property owner to maintain or to allow his/her property to be maintained . . . in a condition which violates any code or ordinance adopted by the city." (Mun. Code, § 8.60.040.) Similarly, under the Fremont Building Standards Code, any violation thereof constitutes a public nuisance. (Mun. Code, § 15.05.050.) Where a determination has been made that there is a public nuisance because of a Fremont Building Standards Code violation, that determination is necessarily a determination that the Fremont Building Standards Code was violated. Such determination falls squarely

---

[12] Fremont makes no argument in this appeal that its local process satisfies Building Code section 1.8.8's "board or agency" requirements or the regulation's requirement that members of such entities be knowledgeable in the applicable building codes, regulations, and ordinances, as determined by the governing body of the city. (Building Code, §§ 1.8.8.1, 1.8.8.2, 1.8.8.3.)

21

within the scope of Building Code section 1.8.8, which governs the appeals process for those adversely affected by "orders, decisions and determinations relating to the application" of building standards published in the California Building Standards Code or any lawfully enacted ordinance by a city. (Building Code, § 1.8.8.3.)

Further, Fremont errs in claiming that *Lippman* is distinguishable because it addressed only "the appeals process arising solely from building code violations" and not public nuisance determinations. In making a similar argument below, Fremont submitted some of the publicly-available municipal code sections that were at issue in *Lippman*. Former Oakland Municipal Code section 15.08.410, subdivision B — the ordinance *Lippman* described as providing the "specific administrative hearing procedure[ ] used for building maintenance code violations" (*Lippman*, *supra*, 19 Cal.App.5th at p. 759) — established the appeals process for orders wherein Oakland determined that a building or structure was substandard *and a public nuisance*.

Next, we decline Fremont's invitation to adopt the trial court's "gravamen" rule to find that, where determinations relating to violations of its building code are at issue *in addition* to determinations relating to violation of zoning codes, the addition of the zoning code violations renders section Building Code 1.8.8 inapplicable. While we accept that Building Code section 1.8.8 does not govern appeals relating to the application of Fremont's zoning code, Fremont fails to provide any support,

22

nor do we believe any exists, for its "gravamen" argument as it relates to orders, decisions, and determinations relative to violations of the Fremont Building Standards Code.  For those, the required appeals process is clear.  (Building Code, § 1.8.8.)

In sum, Fremont's process of setting appeals before a hearing officer conflicts with Building Code section 1.8.8 where the appeal is from a "decision, order or determination by a city, county, or city and county relating to the application of building standards published in the California Building Standards Code, or any other applicable rule or regulation adopted by the Department of Housing and Community Development, or any lawfully enacted ordinance by a city, county, or city and county." (Building Code, § 1.8.8.3.)  As previously explained, Fremont has adopted the California Building Standards Code as amended pursuant to findings under sections 18941.5, 17958.5, and 17958.7.  (Mun. Code, §§ 15.05.010, 15.05.040.)  Plaintiffs have thus established that the hearing before Danforth did not proceed according to law with respect to their appeal of certain of NOA 3's nuisance determinations, but only the nuisance determinations that were premised on violations of the Fremont Building Standards Code.

Similarly, the hearing before Danforth did not proceed according to law with respect to the NOV appeal.  Plaintiffs admit, and the record shows, that Fremont set the appeal of the NOV for hearing before Danforth along with the appeal of NOA 3. For reasons that are not clear, Danforth did not render a substantive decision on the NOV appeal.  Nonetheless, the NOV

involved determinations regarding violations of the Fremont Building Standards Code, and for this reason, the hearing process for appeal of the NOV did not proceed according to law.

Finally, we believe that the failure to provide an appeals process adhering to section 1.8.8 of the Building Code was prejudicial. As *Lippman* observed, the intent of Building Code section 1.8.8 is to provide for separate enforcing and reviewing bodies, and to ensure uniform application of state law. (*Lippman*, *supra*, 19 Cal.App.5th at pp. 762, 764–765; see also *id.* at p. 767 [describing "basic procedural protections" afforded by Building Code section 1.8.8].) The deviation from this procedure was material. (Cf. *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1275–1276 [finding reversible error where doctor did not receive statutorily-mandated review hearing before an independent panel with respect to recommended denial of staff privileges].)

## II.   Traditional Mandamus

"[A] writ of mandate under section 1085 is available where the petitioner has no plain, speedy and adequate alternative remedy; the respondent has a clear, present and usually ministerial duty to perform; and the petitioner has a clear, present and beneficial right to performance." (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 752.)

This suit is broad enough to encompass a challenge to Fremont's practice of refusing to provide for an appeals process required by Building Code section 1.8.8. While the petition was not well drafted, the caption mentioned Code of Civil Procedure

24

section 1085, plaintiffs complained of Fremont's failure to set a hearing before the city council, and they sought "judicial enforcement of the [Fremont's] mandatory duties and obligations with regard to review of appeals of Notices of Violation." Plaintiffs developed their claims below, and the preemption issue presents a question of law. Thus, it is appropriate to treat this as a case seeking traditional mandamus relief as well as administrative mandamus relief. (See *Ochoa v. County of Kern* (2018) 22 Cal.App.5th 235, 241, fn. 5 [mandamus to review police department employment decision converted by court from Code of Civil Procedure section 1085 to section 1094.5]; *Mahdavi v. Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 336–341 [reviewing case as a traditional writ on appeal although action was filed only as an administrative writ proceeding].)

The issuance of a traditional writ of mandamus is warranted here. Plaintiffs stand in a similar position to the plaintiff in *Lippman* who received traditional mandamus relief, and we agree with *Lippman* that "there is a mandatory duty to establish a local appeals board or an agency authorized to hear appeals. And, if no such board or agency exists, the governing body shall act as the local appeals board." (*Lippman, supra,* 19 Cal.App.5th at p. 760.) Fremont has not performed this mandatory duty. Further, "[i]t is not inconsistent to award relief under both sections 1094.5 and 1085 of the Code of Civil Procedure." (*Conlan v. Bonta, supra,* 102 Cal.App.4th at p. 752.)

## III. Additional Declaratory Relief and Code of Civil Procedure Section 1085 Claims

Plaintiffs next contend that the trial court erred in rejecting their "declaratory relief and Section 1085 claims" by ruling, "There is no cause of action for declaratory relief in an administrative mandamus case." Here, plaintiffs reiterate the argument that Building Code section 1.8.8 preempts Fremont's administrative appeals process, and they state the court should have decided their claims of "whether Fremont improperly refused" to set NOA 2 and NOA 2A[13] for appeal hearings and "whether particular statutes that Fremont had charged Plaintiffs with were actually inapplicable to the [property]." Fremont responds that its appeals process did not conflict with state law, and plaintiffs cannot use a declaratory relief claim to review an administrative determination. As set forth below, plaintiffs have not established any additional grounds for reversal.

First, a party may join a complaint for declaratory relief with a writ petition in certain circumstances (Asimow et al., California Practice Guide: Administrative Law (The Rutter Group 2023), § 13:375), but Fremont is correct that an action for declaratory relief is not available to challenge Danforth's or Fremont's application of statutes to the property. (*Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149,

---

[13] Plaintiffs also mention the NOV, but we have already determined that the appeals hearing for the NOV did not proceed according to law.

26

152 (*Tejon Real Estate, LLC*) [declaratory relief is not appropriate to challenge the application of a regulation to plaintiff's land].)[14]

Next, plaintiffs cannot show a present and actual controversy entitling them to a judicial declaration that Fremont has an obligation to set NOA 2 and NOA 2A for hearing. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80 [requirement for declaratory relief is a present and actual controversy between parties].) The administrative record shows that NOA 2A "amend[ed] and supersede[d]" NOA 2, and NOA 3 "amend[ed] and supersede[d]" NOA 2A. NOA 3 is accordingly the only operative nuisance order.

Finally, to the extent that plaintiffs reiterate their preemption argument, we have already explained that a traditional writ of mandate is warranted to compel Fremont to comply with a mandatory duty.

---

[14] Plaintiffs do not elaborate on the substance of this claim, but the record suggests that they sought a judicial determination of whether the California Environmental Quality Act, the Williamson Act, and Measure T (which regulates Fremont's Hill Open Space area) apply to their property because of Fremont's actions in an ongoing permitting process that Lee started in 2019. Declaratory relief is not available to challenge whatever decision may come out of the administrative permitting process. (*Tejon Real Estate, LLC*, *supra*, 223 Cal.App.4th at p. 152.) Danforth applied Measure T, but plaintiffs do not argue in this appeal that they were entitled to a writ of administrative mandamus because Danforth committed legal error in doing so, and they do not present a proper substantial evidence challenge to Danforth's decision (see *post*, fn. 16).

## IV. Claims Related to the Fairness of the Administrative Hearing

We have determined that Building Code section 1.8.8 preempts Fremont's appeals process for local enforcement orders, decisions, and determinations premised on violations of the Fremont Building Standards Code, including nuisance determinations based on violations of the Fremont Building Standards Code. However, the State Housing Law reserves to local jurisdictions power over "local use zone" requirements. (§ 17922, subd. (c).) Building Code section 1.8.8 does not invalidate the appeal before Danforth of the nuisance determinations that were premised on zoning code violations. Accordingly, we turn next to plaintiffs' remaining challenges to the fairness and propriety of the administrative hearing.

### A. Excess of Jurisdiction

Plaintiffs claim (without any citation to the record) that Danforth ordered demolition of every structure on their property, and, in doing so, exceeded her jurisdiction or failed to proceed in a manner required by law. Plaintiffs' main contention is that the procedures for demolition set forth in Municipal Code sections 8.60.100 and 8.60.110 were not followed because Fremont did not provide a " 'competent declaration under penalty of perjury by the city manager, describing the specific conditions existing in the structure which justify the demolition.' "

The statutes upon which plaintiffs rely are inapplicable because they address only abatement of a nuisance *by Fremont*. Summary specific abatement by Fremont is allowed after giving

28

the requisite notice for property that the city manager determines "is imminently dangerous to the life, limb, health or safety" of occupants, users of the property, or the public. (Mun. Code, §§ 8.60.100, subd. (a), 8.60.100, subd. (d).) If the property owner cannot be located or fails to abate the nuisance, the city manager may abate the nuisance to the extent necessary to remedy immediate danger. (*Ibid.*) But "no imminently dangerous building or property shall be abated by demolition" without a declaration from the city manager meeting the requirements of the code. (*Id.*, § 8.60.100, subd. (e).) Distinct from summary specific abatement, Fremont may also abate a nuisance where the property owner fails to comply with a notice to abate and he or she has not appealed an abatement order. (*Id.*, § 8.60.110, subd. (a).) In that situation, where Fremont intends to abate by demolition, a declaration from the city manager meeting the requirements of the code is also required. (*Id.*, § 8.60.110, subd. (e).) Here, Fremont did not act to abate the nuisance by demolition; instead, it sought to compel plaintiffs to abate the nuisance.

Plaintiffs also cite *Hawthorne Savings & Loan Assn. v. City of Signal Hill* (1993) 19 Cal.App.4th 148 (*Hawthorne*), but they fail to show error in Danforth's decision. *Hawthorne* applies the constitutional principle that a property owner must be given the option to repair or demolish a substandard or unsafe building where repair is possible.[15] (*Id.* at pp. 158–163.) Here, with the

_____

[15] Section 17980 codifies this rule for buildings determined to be substandard under section 17920.3 and allows a reasonable

exception of violation 8 (flat work and hardscape work, including cut and fill of soil), Danforth allowed plaintiffs to apply to legalize structures where possible, and, where a structure or portion thereof could not be legalized because plaintiffs built on constrained land or within a riparian corridor, Danforth ordered removal.  For violation 8, Danforth concluded the work could not be legalized, but plaintiffs do not address this violation specifically or show that Danforth erred because repair was an option.  Nor do plaintiffs adequately present and support an argument on appeal showing that due process requires that they be allowed to leave structures within a riparian corridor or on constrained land such that Danforth's order to legalize or remove (which could entail moving the structures capable of being moved) was error.

### B. Evidentiary Rulings

Plaintiffs argue that there were due process violations and an unfair hearing because:  (1) Danforth excluded plaintiffs' exhibits for being untimely, while at the same time allegedly excusing Fremont from producing documents; (2) Danforth excluded a report from a soils engineer; (3) Danforth excluded certain exhibits for lack of authentication; and (4) Danforth required plaintiffs, but not Fremont, to make formal requests to enter exhibits into evidence.

The first and fourth claims are factually inaccurate.  With respect to exhibits submitted by plaintiffs after the deadline,

---

opportunity to repair.  (*Hawthorne*, *supra*, 19 Cal.App.4th at pp. 159–160; § 17980, subd. (c).)

Danforth determined that she would look at the late documents "as they [came]" and make determinations about admissibility. Plaintiffs do not provide any record citations showing that Danforth excluded any exhibits due to untimeliness. Regarding Fremont's alleged production, the record to which plaintiffs cite shows only a discussion of a public records act request, the enforcement of which was not before Danforth. And Danforth reminded both parties to make requests to enter exhibits into evidence.

Next, plaintiffs fail to establish that Danforth excluded evidence that they sought to introduce, and they fail to show prejudice. Fremont objected when plaintiffs' expert began reading into the record a 2011 soils report that had not been produced, and Danforth stated she would not consider the report as evidence of what was asserted therein. The record is clear, however, that plaintiffs did not seek to introduce the report into evidence and instead stated that they sought to refresh their expert's recollection that he had reviewed studies regarding the property. Further, even if this report was improperly excluded, plaintiffs present no reasoned analysis establishing prejudice. (See *Thornbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169, 200 (*Thornbrough*) [evidence exclusion at administrative hearing does not provide grounds for reversal unless error resulted in a miscarriage of justice].)

Plaintiffs' claim of unfairness resulting from exhibits excluded for lack of authentication fares no better. The record reflects that, on the last day of the hearing, Fremont reviewed

31

the exhibits it had entered into evidence, and Danforth asked plaintiffs to do the same. Then, when Danforth reviewed plaintiffs' exhibits, she listed those that had been admitted, excluded others for lack of authentication, and admitted one additional exhibit. Plaintiffs also agreed during this review that some of their exhibits were duplicative of Fremont's and need not be admitted. Plaintiffs do not describe the content of the exhibits excluded for lack of authentication in any detail, and they fail to provide any reasoned argument regarding prejudice. Thus, even if we assume there was error with respect to Danforth's authentication rulings, plaintiffs' claim fails. (*Thornbrough*, *supra*, 223 Cal.App.4th at p. 200.)

Finally, plaintiffs contend that Danforth received some speculative testimony from unqualified witnesses. However, they do not pursue a substantial evidence challenge to Danforth's decision in this appeal, and we accept the trial court's unchallenged ruling that substantial evidence supported the hearing officer's findings.[16] Thus, we cannot conclude that plaintiffs have shown that the admission of purportedly speculative testimony rendered the decision here prejudicially unfair.

---

[16] Plaintiffs do not appear to raise any argument based on lack of substantial evidence. If they intended to raise such a challenge, they have forfeited it by failing to include a fair and complete statement of all facts supporting the judgment in their opening brief. (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.)

### C. Financial Bias

Plaintiffs next argue, but do not establish, that Fremont's process for selecting and compensating a hearing officer violates due process. (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1025 (*Haas*).)

In *Haas*, our Supreme Court found that the practice of hiring temporary administrative hearing officers on an ad hoc basis and paying them according to the amount of work performed gave the hearing officers an impermissible financial interest in the outcome of the cases they were appointed to decide. (*Haas*, *supra*, 27 Cal.4th at p. 1024.) The court cautioned that counties that appoint temporary administrative hearing officers must do so in a way that does not create the risk that favorable decisions will be rewarded with future remunerative work. (*Id.* at p. 1020.) However, the court remarked, "While we do not require any particular set of rules . . . to suggest some procedures that might suffice to eliminate the risk of bias may be helpful. . . . A county that needed more hearing officers might . . . appoint a panel of attorneys to hear cases under a preestablished system of rotation." (*Id.* at p. 1037, fn. 22.)

Here, even assuming that Danforth's contract, tendered in Fremont's request for judicial notice below, is the relevant contract (*Thornbrough*, *supra*, 223 Cal.App.4th at p. 189), the contract shows that Fremont followed rotation procedures like those described by our high court in *Haas*. (*Haas*, *supra*, 27 Cal.4th at p. 1037, fn. 22.) Fremont maintained a list of hearing officers whose names appeared in random order, and,

33

when hearing officer services were required, Fremont selected the person at the top of that list. A hearing assigned to a hearing officer constitutes a turn on the list, and the hearing officer is put on the bottom of the list after taking his or her turn. As such, plaintiffs' financial bias claim fails.

Nor do plaintiffs convincingly argue that bias — financial or otherwise — arises from section 4 of Danforth's contract. This provision, entitled, "Authorized Representatives," designates Danforth as the authorized representative to perform under the contract, and continues: "City's Authorized Representative. For the performance of services under this Agreement, [the hearing officer] shall take direction from the City's Authorized Representative Harvey Levine, City Attorney, unless otherwise designated in writing by the City's Authorized Representative or the City Manager." Plaintiffs maintain that this shows that Fremont controlled the administrative hearing. But even if we were to find the "take direction" language ambiguous, the "Scope of Services" provision clearly states that Danforth shall "[c]onduct an independent, objective, fair and impartial Administrative Hearing in accordance with Federal, State and local laws and the regulations promulgated by the City Manager." The contract thus does not provide that Danforth will defer to Fremont's instruction regarding how to decide administrative hearings. (See *United Farmers Agents Assn., Inc. v. Farmers Group, Inc.* (2019) 32 Cal.App.5th 478, 495 [courts strive to " 'give effect to all of a contract's terms, and to avoid

34

interpretations that render any portion superfluous, void or inexplicable' "].)

Finally, plaintiffs suggest bias existed because the law firm that "advertised that Ms. Danforth worked for it as of 2020 also counted Fremont as one of its clients."  Below, they submitted a request for judicial notice that attached pages purportedly from this firm's website showing that Fremont was a firm client in August 2022 after the hearing at issue.  The trial court denied their request on hearsay and relevancy grounds, and it found the document was not a proper subject for judicial notice.  Plaintiffs ignore the grounds for the trial court's denial, and they do not cite authority or provide reasoned analysis establishing that the ruling was in error.  As such, they have forfeited this claim. (*Thornbrough*, *supra*, 223 Cal.App.4th at p. 189 [plaintiff forfeited claim of error related to court's exclusion of evidence by failing to present argument attacking grounds for exclusion].)

### D. Dual Roles

Plaintiffs assert that they were denied due process because deputy city attorney Bronwen Lacey acted as both an advocate for Fremont and an advisor to Danforth at the administrative hearing, and because Danforth acted as an advocate for Fremont. There was no due process violation.

"Case law establishes that an attorney cannot act as both an advocate for an agency and then as an adviser to the decision maker who reviews the result that the advocate achieved." (*Sabey v. City of Pomona* (2013) 215 Cal.App.4th 489, 495.)  In *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003)

35

108 Cal.App.4th 81 (*Nightlife*), the main authority plaintiffs rely upon, the same attorney took "an active and significant part in the renewal application process" for a cabaret's permit, and then "also appeared and participated in the administrative review of the denial of that application by advising and assisting" a city employee acting as a hearing officer. (*Id.* at p. 90.) The court held that substantial evidence supported the trial court's conclusion that the attorney acted in this dual capacity, and it found that this dual role violated petitioner's right to due process. (*Id.* at pp. 87–90, 98.) The court noted that " '[t]he due process rule of overlapping functions in administrative disciplinary proceedings applies to prevent the participant from being in the position of reviewing his or her own decision or adjudging a person whom he or she has either charged or investigated.' " (*Id.* at p. 92.)

Viewing the existence of the dual role as a foundational issue of fact reviewed for substantial evidence (*Nightlife, supra*, 108 Cal.App.4th at p. 87) and the unfairness as question of law subject to de novo review (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169–1170), we find no error with respect to Lacey. First, we note that plaintiffs fail to show that they objected to Lacey's alleged dual role despite their obvious presence at the administrative hearing. (See *Attard v. Board of Supervisors of Contra Costa County* (2017) 14 Cal.App.5th 1066, 1083 [when a litigant suspects bias on the part of a member of an administrative hearing body, the issue must be raised in the first instance at the hearing].) Second, while Lacey undisputedly

36

served as Fremont's counsel, plaintiffs' record citations do not show that she, like the attorney in *Nightlife*, advised the entity that reviewed the decision for which she advocated.

Plaintiffs' claim regarding Danforth similarly fails. We have reviewed plaintiffs' record citations, and they do not establish that Danforth stepped outside of her role as an administrative hearing officer to act as an advocate for Fremont. As such, we find no support for plaintiffs' contention that bias infected the proceeding or rendered it fundamentally unfair.

### E. Exclusion of the Lee Declaration

Plaintiffs finally contend, briefly, that the trial court should have augmented the record to include statements from Lee's declaration below showing that attorney Lacey was involved in the code enforcement process, Lee's statement that she thought Danforth worked for Fremont, and unspecified "other facts" that Lee offered about exhibits excluded by Danforth.

" 'The general rule is that a hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative agency. [Citation.]' [Citation.] Augmentation of the administrative record is permitted only within the strict limits set forth in [Code of Civil Procedure] section 1094.5, subdivision (e) . . . ." (*Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 101.) Code of Civil Procedure section 1094.5, subdivision (e) provides in pertinent part: "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at

37

the hearing before respondent [agency], it may enter judgment . . . remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

Plaintiffs do not brief the requirements for augmentation under the governing statute or show how they were met. By failing to do so, they have waived the claim that the trial court manifestly abused its discretion in declining to consider the alleged evidence. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'Appellate briefs must provide argument and legal authority for the positions taken. . . .' 'We are not bound to develop plaintiffs' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived' "].)

## DISPOSITION

The judgment denying mandamus relief is reversed as follows: On remand, the trial court is directed to issue a traditional writ of mandate compelling Fremont to establish an appeals board or authorized agency to hear appeals or provide for an appeal to its governing body as required by section 1.8.8 of the Building Code.

The trial court is also ordered to issue a writ of administrative mandate compelling Fremont to set aside the administrative hearing decision sustaining the nuisance determinations in NOA 3 that are premised on violations of the

Fremont Building Standards Code and to provide for an appeal for those nuisance determinations to an appeals board or authorized agency to hear appeals or to its governing body as required by section 1.8.8 of the Building Code.

The trial court is further ordered to issue a writ of administrative mandate compelling Fremont to provide for an appeal of the NOV to an appeals board or authorized agency to hear appeals or to its governing body as required by section 1.8.8 of the Building Code.

In all other respects, the judgment is affirmed.


BROWN, P. J.


WE CONCUR:

STREETER, J.
SMILEY, J.*


*Temple of 1001 Buddhas v. City of Fremont* (A167719)

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:      San Francisco City & County Superior Court

Trial Judge:     Hon. Frank Roesch

Counsel:         Thigpen Legal, PC, Jordana Thigpen for Plaintiffs and
                 Appellants.

                 Allen, Glaessner, Hazelwood & Werth, LLP, Kimberly Y.
                 Chin, Maria Nozzolino, Lori Sebransky for Defendant and
                 Respondent.